# *Ex parte* **Mayor & Aldermen of Florence, *in re* Jones.**

*Petition for Certiorari, in matter of Discharge on Habeas Corpus.*

1. *Municipal corporation; construction of powers under charter.*—The charter of a municipal corporation is strictly construed, though not so strictly as to thwart the legislative intent, fairly and reasonably appearing; only such powers as are clearly granted, necessarily implied, or incidental to the purposes and objects of the corporation, will be regarded as conferred; and a reasonable doubt as to the grant of a particular power, especially if it is in abridgment of natural or common right, will be resolved against the corporation.

2. *Same; power to prohibit sale of spirituous liquors.*—A grant of power in a municipal charter, as in the charter of the town of Florence (Sess. Acts 1878–9, p. 413), "to license and regulate retailing spirituous, vinous, or malt liquors, within the corporate limits, and provide for annulling and revoking such license, on good cause being shown; to close up retail establishments, for such time as they may deem necessary; to prevent the selling of spirituous, vinous or malt liquors, within the corporate limits, whenever they may deem it expedient,"—confers the power to prohibit absolutely the sale of such liquors within the corporate limits.

3. *Municipal ordinance, partly invalid.*—When a municipal ordinance is entire, each part being essential and connected with the rest, the invalidity of one part renders the whole invalid; but, where it consists of several distinct and independent parts, as when it prohibits disjunctively two or more acts, the invalidity of one part does not affect the validity of the others.

FROM the Circuit Court of Lawrence.

Tried before the Hon. H. C. SPEAKE.

This was an application by petition, in the name of the mayor and aldermen of the town of Florence, for a writ of

*certiorari* to bring before this court for review certain proceedings had before the Hon. H. C. SPEAKE, in vacation, on the petition of David Jones for a discharge from custody on *habeas corpus.* Said Jones was in the custody of the marshal of said town of Florence, charged with the violation of a municipal ordinance which prohibited, under a penalty, the sale or other disposition of spirituous liquors within the corporate limits of said town; and he had been duly tried and convicted, in the mayor's court, of that offense. He claimed his discharge from custody, on the ground that the ordinance was illegal and invalid; and the circuit judge, so holding on the hearing, discharged him. A copy of the proceedings had before the circuit judge was made an exhibit to the petition filed in this court.

SIMPSON & JONES, for the petitioners.

R. C. BRICKELL, and EMMETT O'NEAL, *contra.*

CLOPTON, J.—The mayor and aldermen of the town of Florence adopted an ordinance, declaring "that, on and after the first day of January, 1886, it shall be unlawful for any person to sell, or for any consideration to otherwise dispose of, spirituous, vinous, or malt liquors, within the corporate limits of the town of Florence;" and prescribing the penalties for its violation. The material question presented by the record is the authority of the municipal government to enact this ordinance.

Since the decision in *Dorman v. The State,* 34 Ala. 216,—which has been subsequently cited with approval, and the principle thereby established applied to other police powers,—the power of the legislature to prohibit the sale of intoxicating liquors within a designated territorial area, has been regarded as settled beyond the pale of doubt or controversy. It is equally clear, that the General Assembly may confer on public corporations the power to prohibit the sale of spirituous, vinous, or malt liquors within the corporate limits.—*Harris v. Intendant & Council of Livingston,* 28 Ala. 577.

The general and established canons of construction, in respect to such grants, are not controverted. Municipal corporations have no inherent legislative power. They are political institutions, constituting parts of the domestic and internal government of the State, having public purposes and objects, but local in their nature and extent. Power not conferred resides in the legislative or some other department of the government. Exercising a part of the sovereign power of the State by delegation, such corporations must be able to show, by their

charter, or by the general law, authority for the acts which they undertake to perform. The rule of strict construction applies; and only such powers as are clearly comprehended in the grant, or necessarily implied, or incidental to the purposes and objects of the corporation, will be regarded as conferred. But the application of the rule must not be so stringent as to thwart the legislative intent, fairly and reasonably appearing. A reasonable doubt will be resolved against the grant. The rule is clearly and comprehensively stated in 1 Dillon Mun. Corp. § 91, *note*, as follows: "If, upon the whole, there be fair, reasonable, and substantial doubt whether the legislature intended to confer the authority in question, particularly if it relates to a matter extra-municipal, or unusual in its nature, and the exercise of which will be attended with taxes, tolls, assessments, or burdens upon the inhabitants, or oppress them, or abridge natural or common rights, or divest them of their property, the doubt should be resolved in favor of the citizen, and against the corporation." Whatever may be the difference of opinion as to the moral character of the traffic in intoxicating liquors,—a question which we are not authorized to take into consideration in this controversy,—such traffic has been legalized, and regarded as a lawful occupation by past legislation; and such liquors are considered property, the subject of ownership, and entitled to protection, though, like other property, held subject to the condition, " that it shall not be so used as to injure the equal rights of others, or the interests of the community." As the ordinance in question abridges a natural right, we propose to determine its validity under the rules referred to.

The charter confers on the municipal authorities of Florence power " to license and regulate retailing spirituous, vinous, or malt liquors, within the corporate limits, and provide for annulling and revoking such license, on good cause being shown; to close up retail establishments, for such time as they may deem necessary; to prevent the selling of spirituous, vinous, or malt liquors, within the corporate limits, whenever they may deem it expedient."—Acts 1878–79, p. 413. It is contended, that these powers, relating to the same subject-matter, are conferred by the same clause, and should be construed in connection with each other, under the application of the maxim, *noscitur a sociis*, and of the rule, that when general words follow words of a special and particular meaning, they are construed as applicable to things or persons or cases of like kind as are designated by the particular words, no different legislative intent being clearly manifested; and that when so construed, the power granted is, not to prevent the selling of spirituous, vinous, or malt liquors permanently and unqualifiedly,

but only a power, like that of closing retail establishments, to prevent *temporarily*, in such emergencies as the corporate authorities may deem expedient.

The power in question is conferred by section 16 of the charter, in connection with many other enumerated powers, which, taken together, were designed, and deemed in legislative contemplation sufficient, to meet all the requirements of governmental administration, and to ensure the safety, peace, good order, health, and weal of the community. The several grants are distinct, and the different powers are enumerated, and separated from each other by distinct clauses and marks. Though different powers may relate to the same subject-matter, such as selling liquors, the rule invoked is not applicable, where a higher and more general power follows the grant of powers less in degree, each having a particular and a special meaning. The words *prevent, license and regulate, annul and revoke*, and *close up*, have each a particular and definite meaning. By the classification and description of the different powers, a case is not created for the operation of the rule of *ejusdem generis*.

If the application of the maxim *noscitur a sociis* manifests any particular intention, it tends to show, by the relation and association, that a higher, more effective, and different power was intended to be conferred by the grant to prevent the selling whenever deemed expedient, than the preceding powers. While it is true, that the different parts of a statute, relating to the same subject-matter, often reflect light upon each other, and therefore should be construed together, that construction should be adopted which will avoid contradiction, inconsistency, or superfluousness, and, at the same time, leave a field of operation for each sentence or clause, and give some effect to each substantive word. In making the comparison, both the differences and the correspondences must be noted. The powers, preceding the power involved in this controversy, only relate to retailing and retail establishments; and are made specific, because such mode of selling is regarded as the fruitful source of the evils which result from such traffic, affording constant temptation and opportunity for indulgence. To secure the proper management of such establishments, and to escape, as far as practicable, the resulting evils, power is given to annul and revoke the license for cause, and to close up the licensed establishments for such time as some special occasion may make necessary,—not power to prohibit permanently, but to restrain for the time being. We must presume that the legislature were advised of the judicial interpretation, that while the power to grant licenses implies the right to abstain from its exercise, it does not imply or include the power to prohibit. *Ex parte Burnett*, 50 Ala. 461. But there was another recog-

nized mode of selling—by wholesale—to which none of these powers extended, the consequences of which were supposed to be less injurious,·than those of open retailing.   To prevent the mischief that might be supposed to result from selling, both by retail and wholesale, power is granted to prevent selling in any quantity, and·in any way, whenever deemed expedient. The difference is, the exercise of the special powers relating to retailing is temporary in character, while the power to prevent may be permanent, subject to repeal or rescission, and to resumption by the authorities of the right to license.

The presumption is, that the legislature employed words appropriate and adequate to express their intention.   "Where a law is plain and unambiguous, whether it be expressed in general or limited terms, the legislature should be intended to mean what they have plainly expressed, and, consequently, no room is left for construction.   Possible, or even probable meanings, when one is plainly declared in the instrument itself, the courts are not at liberty to search for elsewhere." Cooley's Con. Lim. 68.   In relation to spirituous, vinous and malt liquors, three several powers are granted, each constituting a separate clause : to license and regulate retailing, and to provide for annulling and revoking such license on good cause being shown; to close up retail establishments for such time as the corporate authorities may deem necessary; and to prevent the selling whenever they deem it expedient. . Whether to license and permit retailing, subject to regulations, or to prevent the selling entirely, was wisely left to the discretion and judgment of the municipal authorities, who are acquainted with the sentiment of the people, and local interests.   The purpose was to confer powers which would be sufficient to answer the requirements, not only of the existing condition, but also of the varying conditions that might occur in the history of the corporation.   They are successive and independent grants of distinct powers, not included in the same class, or clause; but distinguished from each other as plainly as the grants of other like police powers, except as collocated, and as they relate to the selling of spirituous, vinous, or malt liquors. Each clause should be construed as if preceded by the words with which the section opens,—"The said mayor and aldermen shall have authority."

If the construction urged by counsel be correct, that "the power, like that of closing retail establishments, is only a power to prevent all sales temporarily, in such emergencies as the corporate authorities may deem a sale, whether by retail or otherwise, violative of the public good," the legislature has committed, as to retailers, the superfluous act of reiterating and re-conferring in general terms the same power previously

granted in limited terms. In this respect, both powers would occupy the same, and no other, field of operation. The express and particular provision for preventing retail establishments from being open and accessible on unexpected and unforseen emergencies, or other occasions rendering their closing necessary, implies a temporary restraint, extended only to retailing. When temporary prevention was intended, apt and qualifying words, expressing the intention, were employed. The omission of any such qualifying words in the grant of the power to prevent, clearly indicates that other, different, and additional power was intended. For this purpose, in the charter of Florence, a word stronger than *restrain* is used, without being coupled with the authority to license and regulate, to annul and revoke, or to close up retail establishments. Words are employed, well understood in their usual and ordinary signification,—plain, unambiguous, and fit to express the intention to prevent permanently and absolutely.

This construction does not operate, as contended, to annihilate the preceding grants. It will not be denied, that different and distinct powers, relating to the same subject-matter, may be conferred, the exercise of all which at the same time is incompatible; and that they may be exercised in the alternative, either the one or the other. The other powers may be in abeyance, but the grants continue in force, with the right to exercise them, whenever the corporate authorities may deem such course politic. The expression, "whenever they deem it expedient," relates to the time when the power may be exercised, and does not limit the period of the continuance of the prevention. Its operation is to exclude a conclusion, by making every license issued subject to the exercise of the power to prevent selling, and to confer the right, notwithstanding licenses may have been issued, which have not expired, and thus practically to annul such licenses without the necessity of cause being shown; which is necessary when the power to license is exercised, and the corporate authorities abstain from exercising the power to prevent. "On good cause being shown," is a limitation upon the power to annul and revoke a particular and individual license, other licenses not being affected; but is excluded as a limitation upon the general power to prevent selling, the exercise of which affects all licenses issued. In respect to express grants of other police powers, sometimes the word "prohibit" is used; and it is insisted that this indicates a change of legislative intent. The two words appear to be used indiscriminately, and as synonyms, apparently to avoid too frequent repetition. The rule is, that if there be a *material* alteration in the words or phrases used, a different intent may be inferred. The difference between

*prevent* and *prohibit* is not sufficiently material. If any difference, *prevent* is the stronger word, conveying the idea of prohibition, and the use of the means necessary to give it effect. An examination and comparison of the different grants, and a consideration of the purposes and objects, do not create a fair and reasonable doubt of the legislative intent to grant the power to permanently and absolutely prevent selling spirituous, vinous, and malt liquors within the corporate limits.

The argument is made, that conceding the authority to prevent permanently, and unqualifiedly, the *selling* of the specified liquors, the ordinance is in excess of the authority, in that it makes unlawful a disposition for any consideration otherwise than selling, and is therefore invalid *in toto*. The rule is, where an ordinance is entire, each part being essential and connected with the rest, if one part is void, the whole is void; but, if it consists of several distinct and independent parts, though one of them may be void, the rest are valid. The part of the ordinance relating to selling is distinct and severable from the other part, and may be carried into effect. The accused was convicted of the offense of selling; and it is unnecessary to inquire into the validity of the part of the ordinance claimed to be in excess of the authority.—*Shelton v. Mayor of Mobile*, 30 Alà. 540; *Annesbury v. Insurance Co.*, 6 Gray, 596; *Com. v. Dow*, 10 Met. 382; 1 Dillon's Mun. Corp. § 421, *note.*

The *certiorari* will be awarded, unless, on being informed of this opinion, the circuit judge shall vacate and annul the judgment and proceedings on the writ of *habeas corpus.*