# Realty Investment Co. *v.* City of Mobile.

### *Bill to ·Enjoin Issuance of Bonds.*

(Decided February 4, 1913.    61 South. 248.)

1. *Municipal Corporations; Bond Election; Ballots; Constitutional Provisions.*—The courts will recognize the right to impose by constitutional provisions the form and contents of ballots to be used in an election to determine whether or not the municipality shall issue bonds.

2. *Constitutional Law; Construction.*—Constitutions are usually framed in a more general language than legislative acts, and should not always be construed by the same rules of construction, not generally being subject to the same technical constructions as the statutes.

3. *Courts; Stare Decisis.*—Under the rule of stare decisis expressions of opinions arguendo in a decided case do not bind the court.

4. *Municipal Corporation; Bond Election; Form of Ballot.*—Under the provisions of section 222, Constitution 1901, the ballots here used substantially complied with the constitutional form therein prescribed, and were sufficient, as a substantial compliance was all that was required.

(Anderson and McClellan, JJ., dissent.)

APPEAL from Mobile Chancery Court.

Heard before Hon. THOMAS H. SMITH.

Bill by the Realty Investment Company against the city of Mobile to perpetually restrain and enjoin the city from issuing or selling certain bonds. From a decree sustaining demurrers to the bill defendant appeals. Affirmed.

FOSTER K. HALE, JR., for appellant. The ballot used did not conform to the requirements of section 222, Constitution 1901, and hence, the election was of no avail, and the bond issue should be enjoined.—*Coleman v. Town of Eutaw*, 157 Ala. 327.

[Realty Investment Co. v. City of Mobile.]

B. BOYKIN BOONE, for appellee. The ballot was a substantial compliance with the requirements of section 222, Constitution 1901, and a substantial compliance is all that is required.—11 Am. St. Rep. 767; 33 Am. St. Rep. 626.; Paine on Elections, sec. 498; 34 Ind. 425; 29 Ill. 54; 51 Miss. 305; 19 Ohio St. 25: 30 Am. St. Rep. 262; 18 S. W. 761; 100 Mo. 361; 129 N. Y. 394; 99 Ky. 37; 15 Cyc. 318; 100 Ia. 27; 81 Mich. 189.

SAYRE, J.—Section 222 of the Constitution contains this provision: "The Legislature, after the ratification of this Constitution, shall have authority to pass general laws authorizing the counties, cities, towns, villages, districts or other political subdivisions of counties to issue bonds, but no bonds shall be issued under authority of a general law unless such issue of bonds be first authorized by a majority vote by ballot of the qualified voters of such county, city, town, village, district, or other political subdivision of a county, voting upon such proposition. The ballot used at such election shall contain the words: 'For ............... bond issue,' and 'Against ............... bond issue' (the character of the bond to be shown in the blank space), and the voter shall indicate his choice by placing a cross mark before or after the one or the other."

In this case the question whether there should be an issue was submitted to the people on a ballot in the following form:

OFFICIAL BALLOT.

Of the Election to be Held September 2nd, 1912, to Submit to the Qualified Electors of the City of Mobile, whether or Not the City of Mobile should Issue $100,000 in Bonds to Extend Its Sanitary Sewer System in Said City.

[Realty Investment Co. v. City of Mobile.]

[ ] For

[ ] Against

{ Proposed bond issue of $100,000 bonds of city of Mobile to be sold for the purpose of extending its sanitary sewer system, said bonds to bear interest at five per centum per annum, payable semi-annually, to mature thirty years from their date and to be payable at the American Exchange National Bank in the city of New York, N. Y.

The proposition of this appeal is that the result of the ensuing election was void for that the official ballot failed to follow the form prescribed by the Constitution. That it did not follow that form with utmost exactness must be conceded. Whether it followed that form substantially, and whether a substantial pursuit of the constitutional form will satisfy all the purposes had in view when the Constitution was framed, or whether, on the other hand, the form must be followed with literal exactness, are the questions presented for decision.

We would not be understood as doubting that the presence in the Constitution of the provision for the form of the ballot to be used in such cases—so far as it is a form—is evidence enough of the fact that the framers of the instrument and the people in adopting it have regarded the provision as of high importance, and that a faithful observance of every essential of the rule prescribed is made mandatory alike upon the courts and officers of election. The right and power of the framers of the Constitution to judge for themselves, and without the supervision of the courts, just what precautions as to form were necessary to secure the

essential thing desired, and the duty of the courts to obey, are beyond question. The provision is mandatory, therefore, in that it is not left optional with the officer preparing the ballot whether he will obey or not, nor is it permitted to the court to condone disobedience. Nevertheless, a form is a form whether prescribed by statute or by Constitution—it deals with the external shape and structure of things rather than their. substance—and, except in cases where there is a lack of legislative power or a conflict between legislative effort and constitutional provision, it is as much the duty of the courts to obey the former as the latter. But there is a substance of forms even; that is, the law may require a substantial, as distinguished from a literal, pursuit of form. "It is to be known," says Lord Coke, "that there are two manner of forms, sc., forma verbalis and forma legalis. Forma verbalis stands upon the letters and syllables of the act; forma legalis is forma essentialis, and-stands upon the substance of the thing to be done, and the sense of the statute."—*Beawfage's Case,* 10 Co. 100; *Smith v. Allen,* 1 N. J. Eq. 43, 21 Am. Dec. 33. Constitutions usually deal with larger topics and are couched in broader phrase.than legislative acts; hence their just interpretation is not always reached by the application of similar methods.—*Houseman v. Commonwealth,* 100 Pa. 222, 232. "A Constitution is not to receive a technical construction, like a common-law instrument, or statute."—*Dorman v. State,* 34 Ala. 216, 235. Here the Constitution has descended to legislative detail, it may be said; but, if this provision for a form were found in a statute, it would be held that a literal compliance should not be exacted.—*Scott v. Simons,* 70 Ala. 352, in which case the court was dealing with the imperative language of the original act of 1873 fixing a form for the separate acknowledgement

of a wife in a conveyance of the homestead. As after-wards codified, the language of the act was made to conform to that of the decision. The application of this principle of substantial conformity to statutory regulations of the manner of holding elections is com-mon.—Payne on Elections, § 498. And in *State v. Nicholson*, 102 N. C. 465, 9 S. E. 545, 11 Am. St. Rep. 767, it was applied in a case where the oath adminis-tered for registration to a large number of voters omit-ted words which were prescribed in the imperative lan-guage of a constitutional provision; the court saying: "In substance and legal effect the constitutional re-quirement is fully met in the oath as taken." And so, while the provision under consideration is mandatory in the sense that it places a duty upon officers charged with the preparation of the ballot in respect to its form which they will not be permitted to deny or evade, yet we think the purpose and requirement of the Constitu-tion will be satisfied with a substantial compliance. To hold otherwise would subordinate substance to form, the end to the means, and this, we think, the framers of the Constitution did not intend.

The substance of the constitutional mandate is that the ballot shall contain both an affirmative and a nega-tive statement of the proposition for an issue of bonds, and that a statement of the character of the bonds shall be embodied in each alternative. It was left to the Legislature to provide regulations for elections gener-ally which would secure a free and fair exercise of the elective franchise. In the matter of elections for bond issues the more definite purpose of this isolated pro-vision seems to have been to provide security for intelli-gence of choice and its easy expression. These consti-tute the substance of things for the security of which the form was provided. In our opinion those purposes

[Realty Investment Co. v. City of Mobile.]

were duly safeguarded and the form provided by the Constitution substantially followed in the ballot in the instant case. It was so arranged as to set forth very clearly the issue in two forms, viz., "For proposed bond issue of $100,000 bonds of the city of Mobile to be sold for the purpose of extending its sanitary sewer system," etc., and, "Against proposed bond issue of $100,000 bonds of the city of Mobile to be sold for the purpose of extending its sanitary system," etc. The use of the printer's brace was such as to make one statement of the character of the bonds serve for both the affirmative and the negative of the question submitted to the voter, whereas an exacting pursuit of the constitutional form would have required that the statement be literally repeated. To the eye and the understanding, however, the statement as to the character of the bonds is made, first in connection with "For," and is then repeated in connection with "Against." In our judgment there was in the preparation of the ballot a substantial compliance with the form provided by the Constitution, and the result of the election should not be overturned.

It may be said that our conclusion cannot be reconciled with that reached in the case of *Coleman v. Town of Eutaw*, 157 Ala. 327, 47 South. 703. We concede that expressions are to be found in the course of the argument of the opinion in that case which, if followed to their logical conclusion, would lead to a result different from that we have indicated as proper in this. But the learned chancellor who tried both that case and this was of the opinion that the ballots used on the two occasions were materially different, and that the opinion of this court in that case, when read in the light of the facts there shown, did not conclude the case at bar. In that opinion of the chancellor we agree. In that case the statement of the character of the bonds

voted upon was not embodied in a sentence with the words "For bond issue" and "Against bond issue," but was made separately and at a different place on the ballot. We do not doubt that that case was properly decided on its facts. As for expressions used or opinions stated arguendo, they are not within the principle of stare decisis, and we do not feel that we are necessarily bound to follow or to overrule them. The authority of adjudged cases is confined to the points actually decided, and the true principles of the decision. "In every court, if a case varies from the facts and circumstances of preceding authorities, the judge is at liberty to found a new decision on these circumstances"— (Lord Eldon, 8 Dow. 112), and it has never been asserted that everything said in the argument of legal questions is to be regarded with the deference due alone to the true principles on which the decision should rest— *(Rawls v. Kennedy,* 23 Ala. 252, 48 Am. Dec. 289).

Let the decree be affirmed.

Affirmed.

DOWDELL, C. J., and MAYFIELD, SOMERVILLE, and DE GRAFFENRIED, JJ., concur.

ANDERSON and McCLELLAN, JJ., dissenting.

McCLELLAN, J.—(dissenting.)—The concrete question presented by this appeal is: Was the ballot used in the election of September 2, 1912—to determine whether the city of Mobile should issue $100,000 of 5 per cent. 30-year bonds, for the purpose of extending the sanitary sewer system of that city—such a non-observance of the form of ballot prescribed by section 222 of the Constitution of 1901 (and by the statute, Code, § 1423, which copies section 222 in respect of the form of the ballot) as to render void the issue of bonds of the city for the purpose stated?

This inquiry may·be more pointedly illustrated than stated, after quoting section 222 in the particular here important. In that respect said section reads: "The ballot ·used at such election shall contain the words, 'For............bonds issue,' and 'Against............bond issue' (the character of the bonds to be shown in the blank space), and the voter shall indicate his choice by placing a cross mark before or after the one or the other."

In the present instance, if the form of ballot prescribed in section 222 had. been pursued, the ballot would have contained ·this:

"For $100,000.00, 5 per cent., 30-year, sanitary sewer · extension bond issue.

"Against $100,000.00, 5 per cent., 30-year, sanitary sewer extension bond issue."

According to the interpretation taken by this court of the quoted provision of section 222 in *Coleman v. Town of Eutaw,* 157 Ala. 327, 47 South. 703, the *form* of the ballot employed in this instance was not an .observance of the *form* mandatorily prescribed in that section, and hence the attempted issue of bonds was void. Reference to that deliverance in interpretation of section 222 will disclose that the court· has now fallen into the same error for which the decree was reversed in *Coleman v. Eutaw.*

One of the most highly respected text-writers on constitutional law has set down in his work these obvious truths: That to ignore in legal administration is to affirmatively invite consequences of far greater harmful effect than even the casting of an unsound conclusion in a concrete case between litigants at the bar. At pages 88 and 89, Cooley says: "A Constitution is not to be made to mean one thing at one time, and another at some subsequent time when the circumstances may have so changed as perhaps to make a different rule in

the case seem desirable. * * * What a court is to do, therefore, is *to declare the law as written,* leaving it to the people themselves to make such changes as new circumstances may require. The meaning of the Constitution is fixed when it is adopted, and it is not different at any subsequent time when a court has occasion to pass upon it."

The courts are not constituted censors to determine the wisdom of constitutional ordainments; and if such a function is assumed, even inadvertently, by the judiciary, the inevitable end is the destruction of written Constitutions. Such instruments are the supreme law, binding all departments of the governments; and if the judiciary should assume the function of passing upon the wisdom or propriety of the Constitution's plain provision, it would violate—not preserve—the charter of its existence; would leave its established governmental orbit.

"The framers of the Constitution must be understood to have employed words in their natural sense, and to have intended what they said. * * * We can only learn what they intended, from what they have said. It is theirs to command; ours to obey. *When their language is plain, no discretion is left to us."* (Italics supplied.)—*Lehman v. Robinson,* 59 Ala. 219, 241; *Ex parte Mayor, etc.,* 78 Ala. 419, 423; *State ex rel. v. Mc-Gough,* 118 Ala. 159, 166-7, 24 South. 395.

In *State ex rel. v. McGough, supra,* it is aptly declared: "Whenever a constitutional provision is plain and unambiguous, when no two meanings can be placed on the words employed, *it is mandatory, and the courts are bound to obey it.* * * * What it ordains must stand as its own unquestioned arbitrary authority in the government of the state. In such a case, as has been said, there is no room for construction, and certainly

none for disobedience by the courts. If so, there would remain no certainty or stableness in the written Constitutions of the states, or federal government."—(Italics supplied.)

Following the obviously sound pronouncements in *Tuskaloosa Bridge Co. v. Olmstead,* 41 Ala. 9, *Weaver v. Lapsley,* 43 Ala. 224, and *Perry County v. Railroad,* 58 Ala. 556, in which Cooley's pertinent language was adopted, it was ruled in *Coleman v. Town of Eutaw,* 157 Ala. 327, 47 South. 703, that the prescription for the *form* of the ballot specified in section 222 was *mandatory;* and that a failure or refusal to observe that form—the observance of which is made an unavoidable condition precedent, by way of mandatory prohibition, to the valid issuance of bonds—would render wholly void any issue of bonds based thereupon. It was there said: "We can deduce from our adjudications mentioned and from the authorities on which they are rested no other rule than that provisions of the organic law, defining a particular mode in which a power is to be exercised, must be taken as limitations against and restrictions upon the observance of any other mode than that prescribed in the organic law, and that a mode attempted other than that particularly defined can work nothing but a nullity."

Besides the form prescribed for bond-issue ballots in section 222, our Constitution contains two other prescriptions of that mandatory nature. One of them, set forth in section 170, prescribes that the style of processes shall be "the state of Alabama," and that all prosecutions shall conclude "against the peace and dignity of the state." The other prescription of that nature, set forth in section 285, is with respect to *form* of ballot for election on proposed amendments to the Constitution. It is therein mandatorily provided:

"Following each proposed amendment on the ballot shall be printed the word 'Yes' and immediately under that shall be printed the word 'No.' The choice of the elector shall be indicated by a cross mark made by him or under his direction, opposite the word expressing his desire. * * * " The statute (Code, § 390) wisely follows the exact requirement, in this particular, of the just-quoted provision of the Constitution. So, too, does the statute (Code, § 7131) wisely conform to the Constitution's requirement, in the indicated particular, in section 170. It may be here pertinently observed that even the Legislature has not assumed to take such liberties with these mandatory prescriptions as was done in the formation of the bond-issue ballot now under view. If that co-ordinate branch of the government had so assumed, could it be for a moment doubted that such a departure from the mandatory prescription of the organic law would, when the question was presented, be declared void by this court?

In the appeal of *Smith v. State,* 139 Ala. 115, 36 South. 727, the indictment did *not* conclude "against the peace and dignity of the state." This court said: "The indictment charges the offense denounced by section 4757 of the Code, but does not conclude 'against the peace and dignity of the state,' as is required by section 4893 of the Code and section 170 of article 6 of the Constitution. *It is therefore insufficient to support a conviction* and should have been quashed." (Italics supplied.) The defendant was discharged. The indictment, by its clear terms, fully advised the accused of the "nature and cause of the accusation" against him. Such is a first and an ultimate purpose of the exaction of a written accusation. But this court, in *Smith's Appeal,* did not think that the effect of nonobservance of that mandatory constitutional provision

could be avoided by reason of the obvious fact that the accused was, notwithstanding the omission of the words the Constitution specifies, fully advised of the nature and cause of the accusation against him. The Constitution's mandate was enforced *as written,* thereby observing the clear judicial duty "to declare the law as written." Certainly, there is no power reposed in this court to weigh the relative necessity or ultimate wisdom of constitutional mandates, by reference to the subjects thereof, and to conclude through that process the relative imperativeness of such mandates. Being without that power, it is impossible that a discrimination may be soundly made between the nonobservance of such a mandate in the drafting of an indictment and the nonobservance of a prescribed *form* for the ballot in bond-issue elections, or in elections upon proposed amendments to the Constitution. If the decision in *Washington v. State,* 53 Ala. 29, may be said to express a different view of the constitutional mandate from that pronounced in Smith's Appeal—in that there the indictment concluded "against the peace and dignity of the *state of Alabama*" instead of "against the peace and dignity of the same," as the organic law then prescribed —it is evident that the departure from the command of the organic law was one where for the specified word of reference, viz., *same,* the indictment employed the very subject of that word of reference, viz., *the state of Alabama;* and, in addition, thereby exactly followed the code-made form in that particular, as the court there ruled. In *Atwell v. State,* 63 Ala. 61, the conclusion of the indictment—returned in March, 1876, after the Constitution of 1875 went into effect December 6, 1875—employed the identical words prescribed in that instrument. It is obvious that neither of these decisions sanctions a view opposed to that prevailing

in *Smith v. State, supra.* It is equally clear that they cannot be taken to justify the substitution, by the Legislature, subordinate officers, or other agencies, of an entirely different form or matter from that the organic law prescribes, as is illustrated by the ballot form with which this appeal is concerned.

With respect to the elements of the form prescribed in section 222, reference to *Coleman v. Eutaw* will suffice without repetition here.

As employed in section 222, *character* is not the synonym of the word *description;* and its use there is figurative. In requirement, it imports the *quality* of the thing, and not its portraiture, which, if its *description* was exacted, would comprehend the detailed account of its every feature. Its import is general, not particular. To insist that character means description —a contention not at all justified—and that to describe the proposed issue in the blank spaces would offend the grammarian's sense of order and propriety, is but, only, an argument against the good sense of the adoption of the *form* mandatorily prescribed. Its only proper place of delivery and of consideration was in the convention writing our organic law. Given an unambiguous meaning in the Constitution, as is patent in this instance, the sole function of the court is, as Cooley expresses and emphasizes it, "to declare the law as written." "It is theirs to command; ours to obey."— *State ex rel. v. McGough,* 118 Ala. 166, 24 South. 395. It is not even pretended that the form of ballot prescribed by section 222 is impossible of practical use, for such a pretense would reflect upon the intelligence of the pretender; and that self-criticism is not to be anticipated, much less actually encountered.

It appears at once that the ballot used in this instance did not conform, as it should have done, to the *form*

prescribed in the Constitution. That is too plain to admit of doubt. If that were otherwise debatable, all doubt is removed by the chief, and really only, contention to sustain this bond issue, that the ballot form used represents a *substantial* compliance with the Constitution's object in prescribing a *form* for the ballot. There is no similarity in respect of *form*. In the *form* prescribed a voter is assured, by Constitution and statute, the privilege of indicating his choice "before or after the one or the other" of two completely stated propositions. The form here used denied the voter that right. A making of his mark on the right of this invented ballot would have expressed no choice whatever; and so, notwithstanding the imperative command of the Constitution that that particular means of expression of choice was of such consequence, in the estimation of the Constitution makers, as to invite its incorporation in so solemn an instrument. The employment of the *form* thus constitutionally prescribed being mandatory, it is the suggestion of an obvious fallacy to assert that any other form of ballot *which would fully advise the electorate of the matter submitted to his choice* may be as validity employed as would be that prescribed in the organic law. If the *form* of ballot prescribed is mandatory, as beyond any doubt it is, it is patent that this command of the Constitution operated, with perfect certainty, to deny to any other authority the right to consider or to determine that any other *form* than that prescribed would accomplish the Constitution's purpose. The fact that the Constitution mandatorily prescribes the *form* of ballot necessarily excludes the right or privilege of any person or authority to substitute his or its judgment on the subject for that of the organic law; to treat the prescription as a mere expression of preference for a particularly defined

mode; to consider another method, ill-advisedly invent-
ed, to be wiser or better than that a constitutional con-
vention wrote and the people of a great state approved
at the ballot box.  Constitutional mandates have not
been so lightly regarded by this court in the past as to
lead it to sanction the substitution of any judgment,
even that of the Legislature, for that the Constitution
clearly expressed; for it has been always accepted here
that that inquiry was wholly foreclosed when the
organic law expressed a clear purpose, an unambiguous
intent; and so, even in cases where *method* was the
Constitution's prescription.  In this connection, the
pertinent, in principle, pronouncement of this court in
*Collier v. Frierson,* 24 Ala. 109, may be repeated.  There
the question was whether the amendment of the Con-
stitution had been validly effected; whether the mode
prescribed by the organic law for its amendment had
been pursued.  It was there said, Justice Goldthwaite
writing: "The Constitution can be amended in but two
ways; either by the people, who originally framed it,
or in the mode prescribed by the instrument itself.
*   *   *   We entertain no doubt that, to change the
Constitution in any other mode than by a convention,
every requisition which is demanded by the instrument
itself must be observed, and the omission of any one is
fatal to the amendment.  We scarcely deem any argu-
ment necessary to enforce this proposition.  The Con-
stitution is the supreme and paramount law.  The mode
by which amendments are to be made under it is clearly
defined.  It has been said that certain acts are to be
done—certain requisitions are to be observed—before
a change can be effected.  But to what purpose are
these acts required, or these requisitions enjoined, if
the Legislature or any other department of the govern-
ment can dispense with them.  To do so would be to

violate the instrument which they are sworn to support; and every principle of public law and sound constitutional policy requires the courts to pronounce against every amendment, which is shown not to have been made in accordance with the rules prescribed by the fundamental law."

In *Tuskaloosa Bridge Co. v. Olmstead,* 41 Ala. 9, 19, the familiar constitutional provision with respect to the amendment or revision of laws by the Legislature was under consideration. In that connection it was said; Justice A. J. WALKER writing: "We have given careful attention to the argument that the clause of the Constitution under consideration is a mere rule of legislative proceeding, and does not render void a law not conformable to it. An anxious desire to allow effect to the will of the Legislature, and to avoid a seemingly harsh visitation of a rule, the usefulness of which is hardly proportionate to its inconvenience, induced us to prolong our advisement on the case, with the hope of discovering reason or authority which would lead us to the support of that argument. But it still seems to us that the clause raises a question of legislative power, and is not a mere rule for the government of the General Assembly in its proceedings. The prohibition is emphatic that no law shall be revised or amended, except in the mode specified. This is a command, not specially, or professedly, addressed to the Legislature alone. It is as general and comprehensive as any prohibition in the Constitution. It is binding upon the executive, who approves or disapproves bills, and upon the judiciary, who declare the law, as well as upon the Legislature. What warrant can there be, then, for the position that it is simply a rule for the guidance of the Legislature? When the Constitution says no law shall be amended, save in a special manner, can the Legisla-

ture say a law may be and shall be amended in a different manner? The case is, to our minds, a plain one of irreconcilable conflict between the paramount law of the Constitution and the enactment of the Legislature. When such a conflict is clearly presented to the judicial mind, the Constitution must prevail."

In *Perry County v. Railroad Co.,* 58 Ala. 556, Justice STONE, writing for the court, thus pronounced: "We think the only safe rule for interpreting clauses of the Constitution which command certain things to be done, or certain methods to be obesrved in the enactment of statutes, is to hold that, when it is affirmatively shown by legal evidence that in the attempt to legislate some mandate of the Constitution has been disregarded, such attempt never becomes a law." Surely, in the light of these adjudications and of many others, delivered by this court, to like effect, it cannot be soundly assumed, without violating plain constitutional commands, that a discretion is lodged anywhere to exercise a power in a different way from that the fundamental law prescribes that power shall be exercised. If such a discretion exists, then the provision of the organic law is not mandatory—an affirmation of status that cannot be justified with respect to the *form* of the ballot prescribed in section 222. Under a long and unbroken line of authority here, to say nothing of the reason of the thing, it would seem to be a complete, irrefutable demonstration of the necessity for, and the importance and imperativeness of, the *form* of ballot prescribed that *it is* prescribed in the Constitution. Nevertheless, the proceedings of the convention writing this Constitution and of its standing committee on "order, consistency, and harmony of the whole Constitution," accord with and emphasize, if that is possible, the particular, specific, plainly expressed constitutional intent

to exclude any discretion anywhere with respect to the form of the ballot in the submission of a choice to the electorate in bond-issue elections.

What is now, in the presently important particular, section 222, was section 3 of the article entitled "Municipal Corporations."—Journal, Const. Convention, p. 1317. It was adopted, along with other pertinent sections on the seventy-first day of the convention.— Journal, p. 1316. There was, in section 3 as then adopted, no form of ballot prescribed. So far as we are now concerned, section 3 read: "No county, city, town, village, district or other political subdivision of a county shall have authority or be authorized by the General Assembly, after the ratification of this Constitution, to issue bonds, unless such issue of bonds shall have first been approved by a majority vote by ballot of the qualified voters of such county, city, town, village, district or other political subdivision of a county, voting upon such proposition. *In determining the result of any election held for this purpose no vote shall be counted as an affirmative vote which does not show on its face that such vote was cast in approval of such issue of bonds.*"—Journal, p. 1317. (Italics supplied.) The proposed instrument was referred to the committee on order, consistency, and harmony of the whole Constitution; and on the seventy-eighth day of the convention the report of that committee was taken up.—Journal, p. 1484. In the report of this committee, shown on Journal, p. 1491, referring to the article on Municipal Corporations, it is related: "(1) The first part of section 3 was rewritten, as will appear in section 222 of the Constitution herewith reported." The rewriting of section 3, as section 222, resulted in the substitution of the provision for *form* of ballot and method of expression of the voter's choice in bond-issue elections, for

these words, italicized in the before-quoted section 3: "In determining the result of any election held for this purpose no vote shall be counted as an affirmative vote which does not show on its face that such vote was cast in approval of such issue of bonds."

The intention thus plainly evinced by the committee on order, consistency, and harmony of the whole Constitution, and appropriated and approved by the adoption by the convention of that committee's report in this particular, was to conclude, finally and fully, against any possibility of uncertainty of the voter's "affirmative vote * * * in approval of such issue of bonds" by prescribing a particular, plain *form* for taking the choice of the electorate, both in respect of the subject of that choice and of the method, particularly defined, whereby the voter shall express that choice, viz., "by placing a cross mark before or after the one or the other" of two thus simply, clearly submitted propositions for his choice. In the light of the considerations adverted to, the conclusion is unescapable that the insistence, that the ballot under consideration represents a substantial compliance with the constitutional mandate, resolves itself into this, and this only: That the *form* of ballot employed in the present instance—patently not the *form* the Constitution prescribes—served as well the constitutional purpose in ordaining the *form* set forth in section 222 as would or does the *form* the fundamental law prescribes in that section. If it were so affirmed, it is too plain for cavil that the process thus sanctioned would be a violation of the command of the organic law; would express a pure assumption of right to observe another method in a case where the organic law had prescribed a particular method; would admit a discretion against which the fundamental law had concluded in unmistakable terms; would

annul a constitutional mandate by giving it, at most, a merely directory effect and operation; would invite uncertainty in respect of clear statement, on the ballot in such elections, and of the expression of the popular will in the premises, by allowing such varied *forms* as numerous municipal and county authorities in the state might see fit to invent, thus injecting into such methods an inquiry—impossible if the constitutional mandate is observed—whether the *forms* variously invented fully advised the electorate of the subject of choice and sufficiently afforded the means for an expression of choice thereupon, and this, notwithstanding the organic law has mandatorily defined the best and only (in its competently arbitrary and conclusive judgment) method and means whereby the subject of the choice may be submitted and the means of the expression of choice may be afforded.

The contention for substantial compliance in the present instance amounts to this: The *form* of ballot invented for this bond-issue election served all the purposes that inspired the mandatory prescription of the particular *form* of ballot in section 222; and, having contrived a *form* of ballot—though different in *form* from that prescribed in section 222—which meets all the requirements of the constitutional *purpose* (not *form,* in its ballot form, there is a substantial compliance, and bonds may validly issue thereupon. If there was no *form* prescribed, this contention would have merit; but since there is such a prescription of *form* in the organic law, and that mandatory, the contention refutes itself. It cannot be that a substantial compliance with a *purpose* or object entertained is a substantial compliance with an exclusively prescribed method and means to effectuate that purpose or object. If this were not true, then our books abound with state-

ment and illustrations of fundamental error; for this court has taken the prescriptions of Constitutions with respect to methods as excluding the observance of invention of any other method, the organic law being always accepted where it commands, as furnishing the final, irrevisable rule, since "what it ordains must stand as its own unquestioned arbitrary authority in the government of the state."

These considerations compel, it seems to me, the conclusion that the ballot form used in this instance did not conform to that the organic law mandatorialy prescribes; and that no valid bond issue could be based thereupon. Since no power of discretion, review, or revision, with respect to the wisdom or necessity of plain, unambiguous provisions of the Constitution, is reposed anywhere, I feel bound to uphold and enforce such provisions of the fundamental law *as they are written.* As I read the books, such has been the unvarying practice and intent of this court in the performance of the grave duty imposed upon it.

In my opinion the decree should be reversed and the cause remanded.

Since the foregoing opinion was written, the views entertained by the majority of the court have been reduced to writing. Reference to the authorities cited therein will, in my opinion, show that they are not entitled to the influence given them by the majority on the question under view.

The case of *Beawfage,* 10 Coke, 100, and the case of *Smith v. Allen,* 1 N. J. Eq. 43, 21 Am. Dec. 33, involved the effect of a nonobservance of *statutory* provisions with respect to taking certain kinds of bonds—assurances against conduct or to pay money. The decision in the *Beawfage Case* is fully stated in *Claasen v. Shaw,* 5 Watts (Pa.) 468, 30 Am. Dec. 338. The former was

followed in *Smith v. Allen, supra*. Of course, in neither of them was a *mandatory* constitutional prescription a factor.

If a question of *construction* was here presented, the language quoted from *Houseman v. Commonwealth*, 100 Pa. 222, 232, and *Dorman v. State*, 34 Ala. 216, 238, would be apt; but, since the mandatory prescription as to *form* of ballot, in section 222, is plain and unambiguous, "no room is left for construction."—*Ex parte Mayor, etc.*, 78 Ala. 423; *State v. McGough*, 118 Ala. 166-7, 24 South. 395; Cooley's Const. Lim. 68. The sole question here is: Has the imperative constitutional command been obeyed?

*State v. Nicholson*, 102 N. C. 465, 9 S. E. 545, 11 Am. St. Rep. 767, deals with the qualification of electors, with respect to the oath taken by them for registration. There the court found and adjudged that the oath administered to the voter was the legal equivalent of the particular oath prescribed in the organic law of that state. It was also said by the court that the oath taken was that "prescribed by the statute in the very words," but that it omitted the express obligation to support the laws of the United States and of North Carolina not inconsistent therewith. As appears from the quotation to be made, the ruling was sustained by the forced and peculiar conclusion that "an obligation and promise made" to "support and maintain" the respective Constitutions "extends to, and embraces all, legislative action which is authorized by, and made pursuant to, them, and the violation of a valid enactment is a violation of the Constitution that imparts its sanction to the enactment." Constitutions are as distinct from enactments as is the *parent* from the *child*. The court, however, was not satisfied to rest its conclusion upon that promise alone, for it was thought necessary to

add: "Aside from these considerations, we are of the opinion that a disregard of those directions found in the law, *fundamental* or *statutory* (except as to the time and place of holding the election), relating to the manner of conducting it, designated as irregularities, not affecting the result as a fair expression of the popular will, does not warrant a rejection of the vote given at a polling place. *The same principle must govern the registering of electors.*" (Italics supplied.)

Manifestly, the court saw and recognized that the only way in which to justify the departure from the employment of the *constitutional oath* was to hold, as was done, that constitutional provisions, including the prescription of the oath ("except as to the time and place of holding the election"), were *directory*, not *mandatory*. The last-quoted expression of the court readily accounts for the previous assertion that the obligation and promise to support and maintain the Constitution comprehended an assumed obligation and promise to support and maintain the laws of the United States and of North Carolina not inconsistent therewith. It need hardly be added, in this connection, that *State v. Nicholson* does not deserve to be followed as authority in preference to these well-considered, opposing adjudications of this court: *Smith v. State,* 139 Ala. 115, 36 South. 727; *Tuskaloosa Bridge Co. v. Olmstead,* 41 Ala. 9; *Weaver v. Lapsley,* 43 Ala. 224; *Perry County v. Railroad,* 58 Ala. 556; *Collier v. Frierson,* 24 Ala. 109; *State v. McGough,* 118 Ala. 159, 166, 167, 24 South. 395.

Even in cases where the prescription for a particular form of oath was *statutory only* (thus, of course, eliminating the major factor of constitutional command), and the oath taken was materially different from that prescribed, *State v. Nicholson* will, upon investigation,

be shown to be out of harmony with the principle applied in many of the best-considered cases in other jurisdictions. See *Perry v. Thompson,* 16 N. J. Law, 72; *Shattuck v. Bascom,* 105 N. Y. 39, 44-6, 12 N. E. 283; *Merritt v. Portchester,* 71 N. Y. 309, 27 Am. Rep. 47; 29 Cyc. pp. 1304, 1305; and others cited in them.

*Scott v. Simons,* 70 Ala. 352, is the remaining case cited in the major question presented. That decision, even from the premise of a statute, supports the proposition I have before written, viz., that an authoritative, mandatory prescription of a mode for the exercise of a power "must be regarded as a negative on all other modes * * * "—*Scott v. Simons, supra.*

And in other cases of the class to which *Scott v. Simons* belongs—dealing with a *statutory* form of acknowledgement—far less departures from that form than appears to have been attempted in the ballot form under view from that the organic law mandatorily prescribes justified this court in pronouncing the acknowledgement invalid and the conveyance ineffectual.— *Strauss v. Harrison,* 79 Ala. 324; *Motes v. Carter,* 73 Ala. 553; *Daniels v. Lowery,* 92 Ala. 519, 8 South. 352; 2 Mayf. Dig. p. 1068 et seq.; 5 Mayf. Dig. p. 9. Since the constitutional prescription is with respect to *form,* and that *form* was wholly unobserved, I can see no basis whatever for an appeal to authorities treating substantial compliance with statutory or other *forms.*

ANDERSON, J., concurs in the foregoing dissenting opinion.