36 So.2d 499

# OPINION OF THE JUSTICES.
## No. 90.

Supreme Court of Alabama.
July 30, 1948.

Opinion of the Justices of the Supreme Court in answer to questions propounded by the Governor under Code 1940, Tit. 13, § 34, as to the validity and construction of an amendment to the Constitution.

June 16, 1948

The Honorable Chief Justice
and Associate Justices of the
Supreme Court of Alabama·
Montgomery, Alabama

Gentlemen:

Important constitutional questions have arisen in connection with the constitutional amendment (herein called "the amendment") proposed by Act No. 587 of the 1947 Regular Session of the Legislature of Alabama (General Acts of Alabama, 1947, page 421), submitted to the qualified electors of the State at a special election on January 6, 1948 (herein called "the amendment election"), and proclaimed a valid amendment to the constitution by proclamation made by me as Governor on January 15, 1948.

There is enclosed a copy of my proclamation (herein called "the notice") giving notice of the amendment election and setting for the the amendment verbatim as it is set forth in Section 3 of said Act No. 587. There is also enclosed a copy of my proclamation made on January 15, 1948, setting out the results of the election.

I feel that it is appropriate to give you the following facts which have caused me to make the request herein contained:

On the same date on which the amendment was voted on, four other proposed constitutional amendments were also voted on pursuant to Acts numbered 478, 538, 585, and 586 of the 1947 Regular Session of the Legislature of Alabama [Gen.Acts 1947, pp. 329, 391, 419]. The 1947 Regular Session of the Legislature finally adjourned on October 2, 1947. No general election and ·no statewide special election was held in this state during the period between the expiration of three months after October 2, 1947, and January 6, 1948.

In the following counties the notice was published on the dates respectively indicated: In Etowah and Tuscaloosa Counties, the notice was·published on the 8th, 15th, 22nd, and 29th days of December, 1947. In Cullman County, the notice was published on the 11th, 18th, 25th, and 31st days of December, 1947. In Dale·County, the notice was published on the 11th, 18th, and 24th days of December, 1947, and on the 1st day of January, 1948. In Dallas County, the notice was published on the 8th, 16th, 22nd, and 29th days of December 1947. In Fayette County, the notice was published on the 14th, 21st, and 28th days of December, 1947, and on the 4th day of January, 1948. There is attached hereto a schedule setting forth the following information with respect to each of the said counties: the number of electors voting on the amendment, the maximum number of electors voting on the other proposed constitutional amendments on the same date, and the total number of qualified electors on the date of the said amendment election.

On March 16, 1948, an election (herein called "the tax election") on the question of levying the special school tax authorized by the amendment was held in the Cities of Anniston, Jacksonville, and Piedmont and in the two school districts in Calhoun County which are outside the corporate limits of the said cities. A majority of the qualified electors voting at the tax election in each of the said cities and in each of the said school districts voted in favor of the said tax.

Pursuant to the provisions of Title 13, Section 34, Alabama Code of 1940, I respectfully request that you answer the following important constitutional questions:

1. Do Sections 1 and 3 of the said Act No. 587, providing for the submission of the amendment at the first special election or the next general election, whichever is the earlier, after the expiration of three months after the final adjournment of the 1947 Regular Session of the Legislature of Alabama, comply with the requirements of Section 284 of the Constitution of Alabama, as amended?

2. Are the requirements with respect to publication of notice of elections on constitutional amendments which are contained in Section 284 of the Constitution of Alabama, as amended, complied with if the

last of the four publications of notice of an election to be held on Tuesday of one calender week is made (a) on Monday of the preceding calender week? (b) on Sunday preceding the Tuesday on which the election is to be held?

3. Are the requirements with respect to publication of notice of elections on constitutional amendments which are contained in Section 284 of the Constitution of Alabama, as amended, complied with if the first of the four publications of notice of an election to be held on Tuesday, January 6, is made (a) on the preceding December 8? (b)on the preceding December 14?

4. Does Section 284 of the Constitution of Alabama, as amended, require that the four successive publications of notice of· an election on a constitutional amendment be made at intervals of exactly seven days, or will publication in each of four successive calender weeks suffice?

5. Would the failure to publish notice of an election upon an amendment in accordance with the requirements of Section 284 of the Constitution of Alabama, as amended, render such amendment invalid, if the number of votes by which such amendment was carried in the State exceeded (a) the total number of electors ˙voting on such amendment in the county or counties in which the required publication was not made? or (b) the maximum number of electors voting on other proposed constitutional amendments submitted on the same day to the electors in the county or counties in which the required publication was not made? or (c) the total number of qualified electors on the date of the said election in the county or counties in which the required publication was not made? (Note: An answer to the fifth question is requested only in the event you answer any part of either the second. or the third question in the negative or in the event you answer that the publications referred to in the fourth question must be made at intervals of exactly seven days.)

6. Was the form of the notice of the amendment election, a copy of which is attached hereto, a sufficient notice to comply with the requirements of Section 284 of the Constitution of Alabama, as amended,

with respect to notice of elections upon constitutional amendments?

7. Was March 16, 1948, the first Tuesday after sixty days following the date the amendment became effective?

8. Does the amendment require that notice of the tax election be posted in accordance with the provisions of Title 52, Section 256, Alabama Code of 1940? If so, would the failure to post such notice in the Cities of Anniston and Piedmont invalidate the tax election held in those cities?

9. Does the amendment require that the returns of the tax election be canvassed within four days following the tax election? If so, would the failure to canvass such returns within four days following the tax election in the City of Piedmont invalidate the tax election held in that city?

10. Are the requirements of the amendment with respect to call of the tax election by the governing bodies of the Cities of Jacksonville and Piedmont complied with if each of the said governing bodies either arranged for the publication of notice of the tax election in each respective city, or designated the officers to conduct the election in each respective city, and if the tax election was actually held in each respective city?

11. Does the amendment require that the Cities of Jacksonville, Piedmont, and Anniston issue and sell jointly the bonds provided for in the amendment, or does it require that said bonds be issued and sold by said cities separately?

12. Does the amendment require that each of the Cities of Jacksonville, Piedmont, and Anniston shall issue and sell the bonds authorized by the amendment only if the Boards of Education in all three cities request the issuance of bonds?

13. Does the amendment require that Calhoun County shall sell one issue of bonds payable from the school tax levied in both of the county school districts in Calhoun County, or does it require a separate issue of bonds for each county school district payable from the school tax levied in the county school district with respect to which the bonds are issued?

14. If the amendment was validly adopted, and if the tax election was validly held,

on October 1st in what years will the tax provided for in the amendment become due and payable?

Respectfully yours

JEF:S      James E. Folsom
ENCLS      Governor

by give notice, direct and proclaim that on Tuesday, the 6th day of January 1948, an election will be held at the several polling places within the State of Alabama, in the manner and form provided by law, upon the following proposed amendment to the

## Schedule

| Counties | Number of Electors who voted on Constitutional Amendment Proposed by Act No. 587 (General Acts of Alabama, 1947 p. 421) | | Maximum Number of Electors who voted on other constitutional Amendments on January 6, 1948 | Number of Qualified Electors on January 6, 1948 |
|---|---|---|---|---|
| | For | Against | | |
| Cullman | 767 | 1,326 | 4,365 | 12,499 |
| Dale | 531 | 394 | 2,305 | 5,402 |
| Dallas | 1,166 | 248 | 2,061 | 5,797 |
| Etowah | 2,086 | 1,975 | 4,832 | 18,047 |
| Fayette | 297 | 430 | 1,484 | 6,840 |
| Tuscaloosa | 1,286 | 892 | 3,232 | 12,782 |

State of Alabama

A Proclamation by the Governor

Whereas, the Legislature of Alabama, at the Regular Session 1947, ordered an election to be held by the qualified electors of the State of Alabama upon a certain proposed amendment to the Constitution of Alabama, which said amendment is herein set out, and ordered that said election be held at the first special election, or the next General Election, whichever is earlier, three months after the final adjournment of the Regular Session of the 1947 Legislature at which the amendment was proposed; and

Whereas, the first special election three months after the final adjournment of the Regular Session of the 1947 Legislature at which the amendment was proposed will be held on Tuesday, January 6, 1948; and

Whereas, notice of such election, together with the proposed amendment is required by law, and by the provisions of the act submitting the amendment, to be given by a proclamation of the Governor to be published in :h county in the State of Alabama once a week for four successive weeks next preceding the said 6th day of January:

Now, therefore, I, James E. Folsom, as Governor of the State of Alabama, do here-

Constitution of the State of Alabama of 1901:

"Calhoun County Special School Tax: In addition to any taxes now authorized, or that may be hereafter authorized by the Constitution and laws of Alabama, there is hereby levied a special school tax of fifty cents on each one hundred dollars worth of taxable property in the Cities of Jacksonville, Piedmont and Anniston and in the several school districts of Calhoun County to be used solely for public school purposes; provided such tax and the time it is to continue shall have been first submitted to the vote of the qualified electors of the school district in which such tax is to be collected and voted for by a majority of those voting at such election; otherwise said tax shall not be collected. A special separate election is hereby called on the First Tuesday after sixty days following the date this constitutional provisions becomes effective, in the Cities of Jacksonville, Piedmont and Anniston and in the several school districts of Calhoun County at which election the qualified voters in the Cities of Jacksonville, Piedmont and Anniston and several school districts of Calhoun County may vote as to whether said special school tax herein levied shall be effective for a period of thirty years, and if the majority of those voting at said election vote in favor of said

special school tax herein referred to, such school tax shall immediately be levied and collected annually thereafter on the first day of October by the Tax Collector of Calhoun County and, if pledged, paid to the Cities of Jacksonville, Piedmont and Anniston; otherwise by him immediately paid to the Board of Education of the Cities of Jacksonville, Piedmont and Anniston, for a period of thirty years from the date of said election in the Cities of Jacksonville, Piedmont and Anniston and in the several school districts of Calhoun County and a special separate election is likewise hereby called in each other school district in Calhoun County on the First Tuesday after sixty days following the date this Constitutional provision becomes effective and the qualified electors of each other school district in Calhoun County shall vote as to whether said special school tax herein levied shall be effective in their respective districts for a period of thirty years, and where a majority of those voting at said election in any such school district vote in favor of said special school tax such special school tax shall be immediately levied and collected annually thereafter on the first day of October by the Tax Collector of Calhoun County and if pledged, paid to County of Calhoun; except that such special tax levied in the Anniston School District shall be paid to the Board of Education of City of Anniston; otherwise by him immediately paid to the Board of Education of Calhoun County, for a period of thirty years in any such school district where the majority of such electors voting at said election vote therefor. This section shall be self-executing.

"The funds arising from the special school tax to be levied hereunder and to be collected therefrom shall be expended for public school purposes for the exclusive benefit of the school district in which collected with all such tax collected in the City of Jasksonville to be expended in the City of Jacksonville and with all such tax collected in the City of Piedmont to be expended in the City of Piedmont, and with all such tax collected in the Anniston School District to be expended in the City of Anniston. After said tax has been voted, and without further authorization of au-

thority, as and when requested by the Boards of Education of the Cities of Jacksonville, Piedmont and Anniston, the Cities of Jacksonville, Piedmont and Anniston shall issue and sell interest bearing bonds with principal and interest to be paid from the funds to be derived from the special school tax hereby levied in the Cities of Jacksonville and Piedmont and Anniston, and in the school districts in which the Cities of Jacksonville, Piedmont and Anniston are located, for the sole purpose of the construction and improvement of school buildings and the acquiring of sites therefor; provided, said net proceeds of said bonds shall immediately be paid to the Boards of Education of the Cities of Jacksonville, Piedmont and Anniston and said bonds shall not be issued for a longer period than thirty years, and said funds to be derived from said special school tax may be pledged by the Cities of Jacksonville, Piedmont and Anniston for the payment of said bonds and the interest thereon, and provided that said bonds shall not be a general obligation of the Cities of Jacksonville, Piedmont and Anniston or of Calhoun County, and shall not be charged to the Constitutional debt limit of the Cities of Jacksonville, Piedmont or Anniston or of Calhoun County. After said tax has been voted, and without further authorization or authority as and when requested by the Board of Education of Calhoun County, Calhoun County shall issue and sell interest bearing bonds with principal and interest to be paid from the funds to be derived from the special school tax hereby levied in each school district in Calhoun County, other than in the Cities of Jacksonville, Piedmont and Anniston and the school districts in which the Cities of Jacksonville, Piedmont and Anniston are located for the sole purpose of the construction and improvement of public school buildings and the acquiring of sites therefor; provided, the net proceeds of said bonds shall immediately be paid to the Board of Education of Calhoun County and that said bonds shall not be issued for longer than thirty years and said funds arising from said school tax may be pledged by Calhoun County for the payment of said bonds and interest thereon and provided that said

bonds shall not be a general obligation of Calhoun County and shall not be charged to the Constitutional debt limit of Calhoun County.

"Except as herein otherwise provided the elections hereinabove provided for shall be called, held, and conducted as provided by law for calling, holding, and conducting of district school tax elections. The governing bodies of the Cities of Jacksonville, Piedmont and Anniston shall appoint and designate the officers, managers, clerks, and returning officers and shall call, canvass, tabulate, and declare the result of the elections provided for in the Cities of Jacksonville, Piedmont and Anniston and in the school districts in which the Cities of Jacksonville, Piedmont and Anniston are located. The governing body of Calhoun County shall appoint and designate the election officers, managers, clerks, and returning officers and shall call, canvass, tabulate and declare the result of, the elections as to any and all school districts in Calhoun County, other than in the Cities of Jacksonville, Piedmont and Anniston and the school districts in which the Cities of Jacksonville, Piedmont and Anniston are located. All such elections shall otherwise be conducted, held, canvassed, tabulated and the results declared as general elections are conducted, held, canvassed, tabulated and the results declared in Alabama."

I further direct and proclaim that notice of this election upon Tuesday the 6th day of January 1948 upon the above set forth amendment to the Constitution of the State of Alabama of 1901, be given by publishing the same once a week for four successive weeks next proceding Tuesday the 6th day of January 1948, in each county in the State of Alabama in a newspaper published in said county.

In witness whereof, I have hereunto set my hand and have caused the Great Seal of the State of Alabama to be affixed by the Secretary of State at the Capitol in the City of Montgomery, on this the 10th day of November, 1947.

(Seal)                    James E. Folsom
                                    Governor
Attest:
   Sibyl Pool
      Secretary of State.

The proclamation setting out the results of the election on the amendment, referred to, and submitted with, the inquiry, is as follows, with omission of the amendment which appears in the preceding proclamation called the "notice," viz.:

State of Alabama

A Proclamation by the Governor

Whereas, in accordance with that certain act of the Legislature passed at the Regular Session 1947 an election was held in the several counties of this State on Tuesday, January 6, 1948, submitting to the qualified electors of the State of Alabama the following amendment to the Constitution of Alabama of 1901, towit: and

Whereas, the votes cast at the said election were canvassed, tabulated and the returns made to the Secretary of State in the manner provided by the laws of the State of Alabama; and

Whereas, on Thursday the 15th day of January, 1948, the Secretary of State, in the presence of the Governor of the State of Alabama and the Attorney General of the State of Alabama, opened the said certificates and returns as made by the Canvassing Board of each county of the State of Alabama, and in the presence of the Governor and the Attorney General of Alabama counted and ascertained the said votes and the result thereof.; and

Whereas, it appears from the said count made in all respects in the manner provided by the Constitution and Statutes of the State of Alabama that the result of said election was as follows:

For the proposed amendment ...... 51,-196 votes

Against the proposed amendment ...... 39,478 votes

Now, therefore, I, James E. Folsom, Governor of the state of Alabama, in accordance with the provisions of the said Act submitting the said amendment, and in accordance with the provisions of the Constitution of the State of Alabama and of the Statutes of the State of Alabama, do hereby proclaim that at said election there were cast for the proposed amendment 51,196 votes, and that there were cast against the proposed amendment 39,478 votes; and

I, as Governor, give notice, proclaim and declare that a majority of all of the qualified electors of the State of Alabama who voted at said election voted in favor of such amendment, and I proclaim that said amendment is valid to all intents and purposes and is now a part of the Constitution of the State of Alabama.

In witness whereof, I have hereunto set my hand and have caused the Great Seal of the State of Alabama to be affixed by the Secretary of State, at the Capitol in the City of Montgomery, on this the 15th day of January, 1948.

———————

Governor

Attest:

———————

Secretary of State

Wm. Alfred Rose, Ellene Winn, and White, Bradley, Arant & All, all of Birmingham, filed brief amicus curiae.

Honorable James E. Folsom
   Governor of Alabama
   State Capitol
   Montgomery, Alabama

Dear Sir:

We acknowledge receipt of your communication of June 16, 1948, in which you request an opinion of the individual Justices of this court on certain constitutional questions.

We will answer your inquiries in the order in which they are propounded.

### One

■ Section 284 of the Constitution of 1901, as amended, prescribes the method by which amendments may be made to the Constitution. In part said section, as amended, provides as follows: " * * * the legislature shall order an election by the qualified electors of the state upon such proposed amendments, to be held either at the general election next succeeding the session of the legislature at which the amendments are proposed or upon another day appointed by the legislature, not less than three months after the final adjournment of the session of the legislature at which the amendments were proposed. * * *" This court has held that under the provision just above quoted the legis-

lature is required to fix the time of a special election on proposed amendments to the Constitution. It cannot authorize the Governor to fix the date of such an election. Johnson v. Craft, 205 Ala. 386, 87 So. 375; Hooper v. State, 206 Ala. 371, 89 So. 593.

By Act No. 587, General Acts 1947, p. 421, passed by the House of Representatives on September 9, 1947, and by the Senate on September 30, 1947, the legislature proposed an amendment to the Constitution relating generally to the levy and collection of taxes within Calhoun County for school purposes. In §§ 1 and 3 of said act it was provided in effect that the proposed amendment be submitted to the qualified electors of this state for their ratification or rejection at an election to be held at the first special election or the ·next general election, whichever is earlier, three months after the final adjournment of the regular session of the 1947 legislature.

■ ■ We are of the opinion that this was a sufficient designation by the legislature of the date of the election to be held on the proposed amendment to the Constitution. True, it was not specifically provided in Act No. 587, supra, that the election should be held at the next general election nor was the exact date of a special election designated. However, it cannot be said that it was the legislative intent that the date of the election should be fixed by the Governor or by any other official of the state.

■ Acts of the legislature proposing amendments to the Constitution do not require the approval of the Governor. § 287, Constitution of 1901; Johnson v. Craft, supra; State ex rel. Garrow v. Grayson, 220 Ala. 12, 123 So. 573. Consequently Act No. 587, supra, became effective when it was passed by the Senate on September 30, 1947. At that time the legislature had definitely provided that special elections be held on other proposed constitutional amendments on the first Tuesday after the expiration of three months following the final adjournment of the regular session of the 1947 legislature. Act No. 478, General Acts 1947, p. 329; Act No. 538, General Acts 1947,

p. 391. We think it clear that the provision in Act No. 587, supra, that the election on the amendment therein proposed was to be held at the first special election or the next general election, whichever is the earlier, after the expiration of three months after the final adjournment of the regular session of the 1947 legislature, indicates that it was the legislative intent that the amendment therein proposed should be submitted at the same time the other proposed amendments to the Constitution were voted upon in special elections which the legislature had already provided for, if such special elections were earlier than the next general election which was to be held after the expiration of three months after the final adjournment of that session of the legislature. It appears that the amendment proposed by Act No. 587, supra, was submitted to the electorate for their approval or disapproval on Tuesday, January 6, 1948, which was the first Tuesday after the expiration of three months after the final adjournment of the 1947 regular session of the legislature. The next general election to be held in this state after the final adjournment of the 1947 regular session of the legislature is to be held in November of 1948. Consequently, the date on which the amendment was submitted to the electorate of this state was earlier than the date of the next general election.

### Two, Three, and Four

These questions all relate to the sufficiency of the notice of the election to be held on the amendment proposed by Act No. 587, supra, as published in certain counties of the state.

In this connection, § 284 of the Constitution of 1901, as amended, provides as follows: " * * * Notice of such election, together with the proposed amendments, shall be given by proclamation of the governor, which shall be published in every county in such manner as the legislature shall direct, for at least four successive weeks next preceding the day appointed for such election."

In § 2 of Act No. 587, supra, the legislature made it the duty of the Governor to give notice of the election by proclamation published in one newspaper in each county in at least four successive weeks next preceding the date of the election.

The purpose of having the notice of the election published is only to bring to the attention of the electorate the fact that the election is to be held on a certain date and to apprise the electorate of the nature of the proposed constitutional amendment. Such being the sole purpose of giving the notice, we think that the provisions of § 284 of the Constitution, as amended, which relate to the publication of the notice should not be given a narrow construction but should be liberally construed.

In many counties of this state there are no daily newspapers published. The weekly newspapers are not published in the several counties of the state on the same day. In some instances a weekly newspaper may be published on one day during one week and on another day the following week.

We think that § 284, as amended, in so far as it provides for publication of the notice of the election, is substantially complied with if the publication of notice is made in either of the following ways: (a) Once in each of the four calendar weeks next preceding the calendar week in which the election is to be held; (b) once in each of the four seven-day periods immediately preceding the date of the election.

We have come to this conclusion without reference to cases dealing with other sections of the Constitution and statutory provisions. We feel that the purpose of § 284 will be accomplished if publication is made in either of the methods above indicated.

In Opinions of the Justices, 237 Ala. 657, 188 So. 387, it was said: "It will suffice if the first publication is twenty-four (24) days before the date of the election." But that statement is not to be construed as meaning that the first publication of the notice cannot be made as late as the twenty-second day prior to the date of the election if the second of

the two methods of publication above outlined is followed.

We have not answered your second, third, and fourth inquiries categorically, but we think what has been said above is sufficient to show that the publication of the notice of the election in the counties of Etowah, Tuscaloosa, Cullman, Dale, Dallas, and Fayette was made in substantial compliance with the requirements of § 284 of the Constitution, as amended.

### Five

In view of what we have said in answer to your inquiries numbered 2, 3, and 4, it is unnecessary to answer your question numbered 5.

### Six

As is the case in practically all acts proposing amendments to the Constitution, the proposed amendment is set out twice in Act No. 587, supra—first in § 1 and again in § 3. There are some variances in the proposed amendment as set out in the two sections of the act, but they are of a minor character and do not affect the substance of the amendment. The amendment as set out in the Governor's proclamation and as published in the several counties in this state is in all material respects identical with the language of the proposed amendment as set out in § 3 of the act, which was the form required to be placed on the ballot. We are of the opinion that the proposed amendment as published complied with the requirements of § 284 of the Constitution of 1901, as amended, with respect to the notice of elections upon constitutional amendments.

### Seven

The amendment to the Constitution proposed by Act No. 587, supra, was submitted to the electorate of this state on January 6, 1948. On January 15, 1948, the Secretary of State, in the presence of the Governor and the Attorney General, opened the certificates and returns as made by the canvassing boards of the several counties of the state and ascertained that 51,196 votes were cast in favor of the amendment and 39,478 cast against it. Thus it appeared that the proposed amendment was approved by the electorate of this state. On the same day, January 15, 1948, the Governor by proclamation made known the result of the election.

The amendment to the Constitution here under consideration contained the following provision:

"* * * A special separate election is hereby called on the First Tuesday after sixty days following the date this constitutional provisions becomes effective, in the Cities of Jacksonville, Piedmont and Anniston and in the several school districts of Calhoun County at which election the qualified voters in the Cities of Jacksonville, Piedmont and Anniston and several school districts of Calhoun County may vote as to whether said special school tax herein levied shall be effective for a period of thirty years, and if the majority of those voting at said election vote in favor of said special school tax herein referred to, such school tax shall immediately be levied and collected annually thereafter on the first day of October by the Tax Collector of Calhoun County * * *."

On March 16, 1948, an election was held to determine whether the said special school tax should be collected. A majority of the qualified electors voting at this election in each of the cities named and in each of the school districts outside those cities voted in favor of the said tax. In order to determine whether March 16, 1948, was "the first Tuesday after sixty days following the date the amendment became effective" it is necessary to ascertain on what date the amendment did become effective. If it went into effect on January 6, 1948, the date of the election itself, then March 9, 1948, would have been the day designated for the tax election. If the amendment became effective on January 15, 1948, the day that the votes thereon were canvassed and tabulated, then March 16, 1948, was the day designated for the tax election.

As here pertinent, § 284, as amended, provides as follows: "* * * In all elections upon such proposed amendments, the votes cast thereat shall be can-

vassed, tabulated and returns thereof be made to the secretary of state, and counted, in the same manner as in elections for representatives in the legislature; and if it shall thereupon appear that a majority of the qualified electors who voted at such election upon the proposed amendments voted in favor of the same, such amendments shall be valid to all intents and purposes as parts of this Constitution. * * *" We are of the opinion that January 15, 1948, the date on which the votes cast at the election held on the proposed constitutional amendment were canvassed and tabulated, was the date that the amendment became effective. We think such is the meaning of that portion of § 284, as amended, above quoted. This conclusion is in accord with the following decisions of other states: State v. Kyle, 166 Mo. 287, 65 S.W. 763, 56 L.R.A. 115; City of Duluth v. Duluth St. Ry. Co., 60 Minn. 178, 62 N.W. 267; Ellis v. City of Cleburne, Tex.Civ.App., 35 S.W. 495.

It follows, therefore, that March 16, 1948, was the first Tuesday after sixty days following the date the amendment became effective and was the date designated by the amendment for the holding of the election to determine whether or not the said special school tax should be collected.

### Eight

The first paragraph of the amendment contains the following provision: "A special separate election is hereby *called* on the First Tuesday after sixty days following the date this constitutional provisions becomes effective, in the Cities of Jacksonville, Piedmont and Anniston and in the several school districts of Calhoun County." (Emphasis supplied.) This paragraph of the amendment ends with the following sentence: "This section shall be self-executing." In a subsequent paragraph of the amendment is found the following provision with reference to the said tax election:

"Except as herein otherwise provided the elections hereinabove provided for shall be called, held, and conducted as provided by law for calling, holding and conducting of district school tax elections.

The governing bodies of the Cities of Jacksonville, Piedmont and Anniston shall appoint and designate the officers, managers, clerks, and returning officers and shall call, canvass, tabulate, and declare the result of the elections provided for in the Cities of Jacksonville, Piedmont and Anniston and in the school districts in which the Cities of Jacksonville, Piedmont and Anniston are located. The governing body of Calhoun County shall appoint and designate the election officers, managers, clerks, and returning officers and shall call, canvass, tabulate, and declare the result of the elections as to any and all school districts in Calhoun County, other than in the Cities of Jacksonville, Piedmont and Anniston and the school districts in which the Cities of Jacksonville, Piedmont and Anniston are located. All such elections shall otherwise be conducted, held, canvassed, tabulated and the results declared as general elections are conducted, held, canvassed, tabulated and the results declared in Alabama."

There is no express provision in the amendment relating to publication of notices of the tax election, unless the words "shall be called, held, and conducted as provided by law for calling, holding, and conducting of district school tax elections" in effect incorporated into the amendment by reference the provisions of § 256, Title 52, Code 1940, which section reads as follows:

"The sheriff must give notice at least thirty days before any election to be held under this article, by publication in some newspaper in the county, if any is published therein, and if not, by writing posted at the courthouse door, and at three other public places in the county of the time of holding, and when any election is to be held for a special tax for school purposes in any rural or city school tax district, written notices shall be posted in three public places, within said district thirty days prior to said election. Said publications, both for special county and school tax district elections for school purposes, shall show the rate of such proposed tax, the time it is proposed to be continued, the purpose for which the levy is proposed

to be made, and a description of the boundaries of the proposed school tax district."

■ While the provisions of this amendment in this connection are not entirely clear, we do not think it was the intention of the legislature in submitting this amendment and in providing for the special tax election in the event the amendment was adopted, that notice of the election be given as required by § 256, Title 52, supra. We think the fact that the amendment itself provided that the election was to be held on the first Tuesday after sixty days following the date the amendment became effective was sufficient designation of the date of said election as to render it unnecessary for the legislature to provide for further notice of the election.

### Nine

■ We deem it unnecessary to answer the first part of your ninth inquiry inasmuch as we are of the opinion that a mere failure to canvass the returns of an election on the date designated therefor does not vitiate the election. Constitutional and statutory provisions as to the time and place for making and completing the canvass should be complied with, but such provisions are directory and a departure therefrom is immaterial. 29 C. J.S., Elections, § 236(b), pages 339, 340.

### Ten

■ In view of the fact the amendment itself specifically called the special tax election, we do not think that the failure of the governing bodies of Jacksonville and Piedmont to formally adopt resolutions calling the election can vitiate the election held on the date for which it was called by the amendment.

### Eleven

■ Construed as a whole, we think the amendment contemplates that each of the cities issue and sell its bonds separately. The bonds provided for in the amendment are to be paid from the proceeds of the special school tax levied thereunder, and since the proceeds of the tax in each separate city are to be expended in or for

the benefit of the schools of that city, it is clear that each city must issue its own bonds.

### Twelve

■ We think it was the purpose of the amendment to authorize each of the three cities to issue and sell its bonds when requested to do so by the Board of Education of that city. The conditions in each city would determine whether the Board of Education therein deemed it wise or necessary to request the issuance of the bonds for the purposes specified in the amendment. We do not think it was intended that the Board of Education in one of the cities by refusing to make such a request could prevent the issuance of bonds in the other cities.

### Thirteen

The amendment authorizes the issuance of the bonds by Calhoun County in the following language:

"After said tax has been voted, and without further authorization or authority as and when requested by the Boards of Education of Calhoun County, Calhoun County shall issue and sell interest bearing bonds with principal and interest to be paid from the funds to be derived from the special school tax hereby levied in each school district in Calhoun County, other than in the Cities of Jacksonville, Piedmont and Anniston and the school districts in which the Cities of Jacksonville, Piedmont and Anniston are located for the sole purpose of the construction and improvement of public school buildings and the acquiring of sites therefor * * *."

The following portion of the amendment is also pertinent to your thirteenth inquiry: "The funds arising from the special school tax to be levied hereunder and to be collected therefrom shall be expended for public school purposes for the exclusive benefits of the school district in which collected * * *."

■ Inasmuch as the funds arising from the special school tax can only be expended for public school purposes for the exclusive benefit of the school district in which collected and since the bonds in

question are payable from the special school tax, we think the amendment contemplated that when requested by the Board of Education of Calhoun County, Calhoun County is required to sell a separate issue of bonds for each of the school districts, each issue of bonds to be payable from the tax collected in the district with respect to which the bonds are issued.

### Fourteen

The amendment provides in part as follows: "A special separate election is hereby called * * * at which election the qualified voters * * * may vote as to whether said special school tax herein *levied* shall be effective for a period of thirty years, and if the majority of those voting at said election vote in favor of said special school tax herein referred to, such school tax *shall immediately be levied and collected annually thereafter on the first day of October by the Tax Collector of Calhoun County."* (Emphasis supplied.)

 We are of the opinion that the provision above quoted provides that the approval by the voters of the tax puts in operation the levy of the tax provided by the amendment and that the first year's taxes become payable on October 1st following the tax election, that is, on October 1, 1948, with the last year's taxes being payable on October 1, 1977.

Respectfully submitted,
ARTHUR B. FOSTER
J. ED LIVINGSTON
THOMAS S. LAWSON
DAVIS F. STAKELY
Justices

GARDNER, Chief Justice

This was an important special election and the matter of notice as to the time of election was, of course, material to the voters, I cannot construe the language of the amendment to any other effect than that such notice was required as specified in § 256, Title 52, Code of 1940. In the absence of such notice the election would be ineffective. Shanks et al. v. Winkler et al., 210 Ala. 101, 97 So. 142.

I have no objection to the other features of the opinion agreed upon by the majority. My disagreement relates to this matter of notice.

Respectfully,
LUCIEN D. GARDNER
Chief Justice

We concur in the foregoing view of Chief Justice GARDNER.
JOEL B. BROWN
ROBERT T. SIMPSON
Associate Justice