# McKemie *v.* Gorman.

*Bill of Interpleader by County School Superintendent, against Claimants of School Fund.*

1. *Public schools in Opelika; school district, and powers of board of trustees.*—Under the act of the General Assembly approved April 15th, 1873, entitled "An act to empower the mayor and city council of Opelika to establish and maintain a system of public schools within said city, and for other purposes" (Sess. Acts 1872-3, p. 246), and the several subsequent acts of the Board of Education, the area bounded by the city limits was established as a school district, separate and distinct from the other school districts of the county; the public schools within that district, their management and control, were committed to a board of trustees to be elected by the city council; the board of trustees

[McKemie v. Gorman.]

thereby created became a *quasi*-corporation, having a capacity of perpetual succession, and the express power of employing teachers to conduct the public schools; their contracts with teachers might be made verbally or in writing, and would be subject to the same inferences and implications that bind an individual in the employment of agents or servants; and the validity and operation of these contracts could not be impaired, or in any manner affected, by a change in the membership of the board of trustees, created by a new election.

2. *Special or local law as to payment of teachers by school superintendent of Lee county.*—The special act approved February 9th, 1877, entitled "An act to authorize the county superintendent of Lee county to pay certain debts contracted by the trustees of the public schools of the city of Opelika" (Sess. Acts 1876-7, p. 225), is a valid statute, belonging to the class of curative or healing statutes, and is not obnoxious to the constitutional provision (Art. IV, § 23) imposing restrictions on special and local legislation.

3. *Notice of application for special or local law.*—Whether or not notice was given of the intention to apply for the passage of a special or local law, as required by the 24th section of the 4th article of the constitution, is not a disputable fact, as to which evidence may be received to invalidate the law, when rights are asserted under it. Such notice is conclusively presumed to have been given, unless the contrary is affirmatively shown by the journals of the General Assembly.

APPEAL from the Chancery Court of Lee.

Heard before the Hon. N. S. GRAHAM.

The bill in this case was filed on the 27th July, 1877, by John F. Yarbrough, the superintendent of the public schools of Lee county, against the rival claimants of certain school moneys in his hands, amounting to $540; asking that they be compelled to interplead, asserting their respective rights, and that the court decide who was entitled to the money. The fund in the hands of the complainant was a part of the moneys apportioned to Lee county for the scholastic year 1876-7, and was deposited in court, on the filing of the bill, to await the decision of the cause; and the contesting claimants of the fund, admitting that the bill was properly filed, presented their claims, under the order of the court, by appropriate pleadings.

The claimants were, on the one hand, W. J. McKemie, Miss Callie McKemie, and Miss C. E. Foreman, who had taught the public schools in Opelika, during the months of October, November, and December, 1876, under verbal contracts with the trustees of the school district; and their accounts, or claims, were approved by the trustees with whom the contracts were made, under authority conferred by the special act approved February 9th, 1877, entitled "An act to authorize the county superintendent of Lee county to pay certain debts contracted by the trustees of the public schools of the city of Opelika," which is in these words: "*Be it enacted,*" &c., "that the county superintendent of Lee county be, and he is hereby, authorized and required, upon the ap-

[McKemie v. Gorman.]

proval of the board of trustees of the public schools of the city of Opelika under whose supervision the debts were contracted, to pay W. J. McKemie, Miss C. E. Foreman, and Miss Callie McKemie, the amounts severally due them for services as teachers in said public schools for the months of October, November, and December, 1876; said amounts to be paid from the proceeds of the apportionment of the Opelika school district for the scholastic year 1876-7."—Session Acts 1876-7, p. 225.

Before the passage of this statute, the term of office of these trustees had expired, and they had been succeeded by a new board, elected by the city council of Opelika; and the new trustees had employed other teachers—namely, Mrs. Anna Gorman, Mrs. J. E. Riley, and Mrs. O. W. Ware, who are the other claimants of the fund. These contracts were made in January, 1877, and were reduced to writing, and signed by the respective parties. By their terms, the schools were to be taught for five months, commencing February 1st, 1877; and the services were performed as stipulated. These claimants insisted, among other things, that the said special act of the General Assembly was unconstitutional and void; and, among the specified grounds of objection, it was alleged that notice of the intention to apply for its passage was never given in Opelika, nor in Lee county. The fact that no such notice was given was admitted, but objection was made to the relevancy and admissibility of the evidence.

The view taken of the case by this court renders it necessary to state the provisions of an act of the General Assembly, and several acts of the Board of Education, which were set up in the answer filed by McKemie and his associates. On the 15th April, 1873, an act of the General Assembly was approved, entitled "An act to empower the mayor and city council of the city of Opelika to establish and maintain a system of public schools within said city, and for other purposes," which contains five sections, in substance as follows: The first section declares, "that the mayor and council of the city of Opelika be, and they are hereby, empowered to establish and maintain a system of public schools, which shall be free to all the children within said city;" the third section provides, "that said mayor and council shall, by ordinance or otherwise, in their discretion, provide for appropriate agencies to regulate, supervise, and carry on said system of public schools, and render the same efficient;" the second and fourth sections authorize the levy of taxes and the issue of bonds "to raise revenue for the establishment and maintenance of said system of public schools;" and the fifth sec-

tion repeals all inconsistent laws.—Session Acts 1872-3, p. 246.

On the 14th December, 1872, prior to the passage of this act of the General Assembly, the State Board of Education had passed an act, entitled "An act to establish a city public school in the city of Opelika," which contained seven sections. The first section of said act declares, " that the corporate limits of the city of Opelika shall constitute a school district, separate and distinct from the remaining school districts and parts of districts of the county of Lee ; and the general law regulating the public schools of the State shall apply to said school district, except as hereinafter provided." The second section declares, "that the public schools of the city of Opelika shall be under the control of the city board of trustees, consisting of nine members, to be elected by the city council of Opelika, at their first meeting in July, 1873 ; of whom, five shall constitute a quorum." The third section declares, that the board of trustees, whose organization is provided for, " shall exercise all powers, and be subjected to all the duties prescribed by law for township boards of trustees, but, in addition to such powers and duties, may exercise all other powers, and discharge all other duties, imposed by the ordinances of the city council of Opelika for the said city, so far as may be involved in the collection and distribution of money arising from local and special laws, or from any other source, and not derived from the school fund of the State." The fourth section gives the city board of trustees power to elect a superintendent and other teachers of the public schools of the city, and to establish rules and regulations for the management and government of the schools, " not inconsistent with the school laws." The fifth section prescribes the duties, compensation, &c., of the superintendent of the city schools. The sixth section, as afterwards amended, provides, " that the city of Opelika, as a separate school district, shall receive its proportionate share of the educational fund apportioned to the county of Lee, including a *pro-rata* share of the sixteenth section fund of each township that lies partly within the corporate limits of the city, and all the poll-tax collected in the corporate limits of said city ; and the county superintendent of education of Lee county shall keep said moneys separate and apart from the other educational fund of said county, to be used exclusively for the payment of teachers in the public schools of the city of Opelika." The seventh section, as amended, provides, " that the accounts of teachers for services rendered in the public schools of the city of Opelika, when approved by the board of trustees, shall be paid by the county superin-

[McKemie v. Gorman.]

tendent of education of Lee county, as other teachers in said county are paid." By another act of the Board of Education, approved December 11th, 1874, it was provided, " that the city board of trustees of the city public schools of Opelika shall be elected by the city council of Opelika, at their first meeting in January, 1875, and every two years thereafter."

On the final hearing, on pleadings and proof, the chancellor held that the claims of Mrs. Gorman and her associates were entitled to be first paid out of the fund, and that, as against them, the special act authorizing the payment of the claims of McKemie and his associates was invalid and of no effect. From this decree McKemie and his associates now appeal, and here assign it as error.

W. H. BARNES, for appellants.

SAMFORD & LINDSEY, contra.

BRICKELL, C. J.—The effect of the act of the General Assembly, approved April 15th, 1873, and of the subsequent acts of the Board of Education, was, as is declared in one of them, to convert the corporate limits of the city of Opelika into a school district, separate and distinct from the school districts of the county of Lee governed by the general law. The schools authorized in the city, their management and control, were committed to a board of trustees, elective by the city council, and not to the township trustees. These schools were, however, to participate in the distribution of the public moneys appropriated for the use of schools, apportioned to Lee county. The county superintendent of education was required to keep separate from other educational funds the proportionate share of the city, and to apply it to the payment of the accounts of teachers, when such accounts were approved by the board of trustees. By this legislation, the board of trustees of the city became a *quasi* corporation, having a capacity of perpetual succession, and the express power of employing teachers to conduct the city schools.—*School Commissioners v. Aiken*, 5 Port. 169 ; *Clark v. Mobile School Commissioners*, 36 Ala. 621 ; *Horton v. Same*, 43 Ala. 593. The contracts for the employment of teachers could be made by the trustees in writing, or by parol ; and they would be bound by the same inferences and implications, which would bind an individual, in the employment of agents or servants.—1 Brick. Dig. 403, § 33. It is undisputed, that the appellants taught the public schools of the city during the months of October, November and December,

[McKemie v. Gorman.]

1876, and were by the board of trustees recognized as acting under employment from them ; and it can scarcely be regarded as a matter of dispute, that there was a verbal contract, stipulating their compensation. These facts bind the trustees—the corporation—to the same extent as if the contract had been reduced to writing, and the evidence of corporate assent had been manifested by a resolution of the trustees, entered on the minutes of their proceedings.

No change in the membership of the corporation—the substitution by an election of other and different individuals as trustees—would affect the validity or operation of the contract, nor relieve the board of trustees from the obligation and duty of securing to the appellants the stipulated compensation, whenever there were funds in the hands of the county superintendent, which were applicable to their payment ; and such funds were applicable whenever there were not prior claims upon them. The obligation of the contracts of corporations is not of such frailty and uncertainty, as to depend upon the continuance in office of the same persons by whom the contracts were made, as agents, or as the governing body. Nor are they subject to be impaired or destroyed, when they involve private, individual rights, by legislative changes or modifications of the corporate charter, when such changes or modifications lie within the scope of legislative power.—*Trustees of University v. Moody*, 62 Ala. 389; *Broughton v. Pensacola*, 93 U. S. 266.

In the court below, this controversy resolved itself into a single inquiry; and that is the shape it has taken by the argument in this court. That inquiry is the validity of the act of the General Assembly, approved February 9, 1877, which authorized the county superintendent to pay the claims of the appellants, from the proceeds of the apportionment of the funds to the schools of the city, for the scholastic year 1876–7, upon their approval by the board of trustees under whose supervision they were contracted—Pamph. Acts, 1876–7, p. 225. This act is supposed to infringe several provisions of the constitution, to which we will presently refer. The purpose of the General Assembly, in the enactment of this statute, was, doubtless, to cure some defect, real or imaginary, in the existing laws, which would prevent the trustees making the contract with the appellants from approving their accounts or claims for compensation, and would prevent the county superintendent from paying them from the funds designated. But it is not necessary to indulge any speculation or conjecture as to the motives which may have controlled in its enactment. In its terms it is clear and mandatory ; and if there has not been a plain violation of

[McKemie v. Gorman.]

the constitution in its enactment, obedience to it must be yielded.

It is supposed to infringe the twenty-third section of the fourth article of the constitution, which reads: "No special or local law shall be enacted for the benefit of individuals or corporations, in cases which are or can be provided for by a general law, or where the relief sought can be given by any court of this State; nor shall the operation of any general law be suspended by the General Assembly for the benefit of any individual, corporation, or association." Without now discussing how far it rests in the discretion of the General Assembly to determine when and in what cases a special or local law ought to be enacted, we do not find any general law which would confer on the county superintendent, and the trustees under whose supervision the contracts with appellants were made, the authority conferred by this special enactment. Certainly there was no general law, which would have authorized the trustees, though their official term had expired, and their successors were in office, to approve the claims of appellants, or which would have given any force to such approval. There is no general law, which would have authorized the county superintendent to act upon such approval, and which would have made it, for him, conclusive evidence of the validity of the claims. Nor was there any general law, which would have afforded the relief afforded by the special enactment; and it is plain there was no court which could have afforded it. The section of the Code, which gives teachers a summary remedy against county superintendents who fail to pay them, having money in their hands (Code of 1876, § 915), was the 9th section of the 4th article of the general school law, approved February 8th, 1877, and the first section of the 10th article of the law declared its provisions inapplicable to cities and incorporated towns provided for by local school laws.

If it is admitted, that notice of the intention to apply to the General Assembly for the enactment of this statute ought to have been given, in obedience to the 24th section of the 4th article of the constitution, notice is conclusively presumed, unless the absence of it is affirmatively shown by the journals of the General Assembly. It is not a disputable fact, in reference to which evidence may be received, to invalidate the enactment, whenever rights are asserted under it, leaving the enactment to be declared valid in one case, when there is a want of evidence countervailing the presumption, and invalid in another when such evidence is introduced. Laws do not rest in such uncertainty, or on such unstable foundations.

[Warren & Burch v. Jones.]

The statute belongs to that class of curative, or healing statutes, the General Assembly have the undoubted power, and a large discretion in enacting. No private, individual rights are infringed by it, and obedience to it is a duty. It was the duty of the county superintendent, when the accounts of the appellants were approved by the trustees, under whose supervision they were, contracted, to have paid them from the funds apportioned 'to the Opelika school district for the scholastic year 1876-1877.

The decree of the chancellor is reversed and annulled, and this cause is remanded to said court, for further proceedings therein in accordance with this opinion.