47 So.2d 643

**In re OPINION OF THE JUSTICES.**
No. 113.

Supreme Court of Alabama.
July 21, 1950.

The Honorable Chief Justice
and Associate Justices of
the Supreme Court of Alabama
Montgomery, Alabama

Gentlemen:

Important constitutional questions have arisen in connection with the validity and interpretation of the constitutional amendment proposed by Act No. 473 adopted at the 1949 Regular Session of the Legislature of Alabama (General Acts of 1949, page 690).

Notice of the election upon that amendment was given by me by proclamation published in a newspaper published in each county of the state once a week for four successive weeks. In each county except Baldwin, the last of the four publications was made either (a) during the period of seven days immediately preceding December 13, 1949, the date of the election, or (b) during the calendar week immediately preceding the calendar week in which the election was held. In Baldwin County the dates of the four publications were the 10th, 17th, and 24th days of November, 1949, and the 1st day of December, 1949, the last publication thus occurring twelve days preceding the date of election and three days earlier than the calendar week immediately preceding the week during which the election was held.

At the election held on December 13, 1949, 23,154 of the qualified electors of the State of Alabama voting upon said amendment voted in its favor, and 20,336 voted against it, the amendment having thus been approved by a majority of 2,818 of the qualified voters in the state. The total number of qualified voters in Baldwin County at the time of the said election was in excess of 6,-000. The total number of votes cast in Baldwin County upon said amendment was 478, of which 296 votes were in favor of the amendment and 182 against it.

Pursuant to the provisions of the amendment, an election was held on April 11, 1950 in the Courtland School District in Lawrence County upon the increase of indebtedness, the issuance of bonds and the increase in taxation provided for in the amendment. The majority of the qualified electors of the Courtland School District voting at said election authorized the proposed increase of indebtedness, the proposed issuance of bonds (aggregating $90,000 in principal amount), and the proposed increase in the rate of taxation; the vote on said proposals having been 191 for and 10 against.

On February 24, 1950, the Board of Education of Lawrence County adopted a resolution determining the matters and facts required by the said constitutional amendment to be determined upon and made public, including the period over which the proposed bonds to be issued will mature. The said resolution was published in the Moulton Advertiser, a newspaper published in the county on the 9th, 16th, 23rd and 30th days of March, 1950. A publisher's affidavit respecting the publication of said resolution is attached to this letter.

A notice of the said election held on April 11, 1950 was published in the Moulton Advertiser on the 9th, 16th, 23rd, and 30th days of March, 1950. A typographical error occurred in the said notice so that the maturity dates of the proposed bonds were incorrectly set forth. A publisher's affidavit respecting publication of said notice is also attached.

The maturity schedule set forth on the ballot used at said election on April 11, 1950, described the proposed bonds as maturing in the following aggregate principal amounts on February 1 in the following years: $2,000 in 1952 to 1954, inclusive; $3,000 in 1955 to 1966, inclusive; and $4,000 in 1967 to 1978, inclusive. The same maturity schedule is set forth in said resolution adopted on February 24, 1950 and published as aforesaid. The maturity schedule set forth in said notice as published was the same as that shown on the ballot and in said published resolution, except that the numerals "1956" appeared instead of "1966" in the phrase "1955 to 1966, inclusive".

Pursuant to the provisions of Title 13, Section 34, Code of Alabama of 1940, I respectfully request that you answer the following important constitutional questions:

1. Is the said constitutional amendment invalid because of the fact that notice of the election on December 13, 1949 upon said amendment was published in Baldwin County on the following dates only, viz: the 10th, 17th and 24th days of November, 1949, and the 1st day of December, 1949?

2. Do the provisions of the constitutional amendment respecting the calling of the election upon the increase of indebtedness, the issuance of bonds and the increase in rate of taxation require that the maturity schedule of the proposed bonds be set out in the published notice of said election? If so, was said election held on April 11, 1950, rendered invalid by the typographical error in setting forth in said public notice the maturity schedule of the proposed bonds?

Respectfully yours,
JAMES E. FOLSOM
Governor of Alabama
His Excellency, James E. Folsom
Governor of Alabama
State Capitol
Montgomery, Alabama
Dear Sir:

Your inquiry of June 2, 1950, regarding the validity and interpretation of the constitutional amendment proposed by Act No. 473, General Acts 1949, p. 690, is dealt with in the order in which the questions are propounded.

## I.

Your first question seeks our opinion regarding the effect on the amendment where there has not been a literal compliance with § 284 providing for notice of such election to be "published in every county * * * for at least four successive weeks next preceding the day appointed for such election." We note from your letter that the defection was that in one county, Baldwin, the last published notice of the proposed election was made on the twelfth day preceding the date of the election.

■ We have answered inquiries of this character and the court has also considered the question and rested decision on grounds other than now considered. Opinion of the Justices, 251 Ala. 78, 36 So.2d 499; Doody v. State, ex rel. Mobile County, 233 Ala. 287, 171 So. 504. But on a careful reconsideration of the subject, we are of the opinion that no judicial inquiry can now be undertaken to test the validity of the amendment on the ground that the terms of § 284 as regards the giving of notice of the election were not complied with. Being so, no important constitutional question inheres and it therefore becomes unnecessary to answer categorically that phase of your inquiry. We will seek to exposit the theory on which we rest our decision.

Section 284, as amended, stipulates, *inter alia,* that if, after the votes in the election on the amendment have been canvassed, tabulated and returned to the secretary of state and there counted, it shall appear that a majority of the qualified electors who voted at such election upon the proposed amendment voted in favor thereof, such amendment "shall be valid to all intents and purposes as parts of this constitution" and that "the result of such election shall be made known by proclamation of the governor."

We entertain the view that after the amendment has thus progressed to that stage of having been so adopted and become a part of the organic law, namely, has been declared by the quoted constitutional prescriptions to be "valid to all intents and purposes as parts of this constitution," no one can question its validity in any collateral proceeding on a matter dehors the record. Stated another way, when the proceeding has reached this stage, unless invalidity by reason of not having followed a constitutional mandate appears on the face of the record, it cannot be impeached. This is a well known principle firmly embedded in all jurisprudence.

And we may observe, also, there is now at this stage of the matter no method for a direct attack. Savage v. Wolfe, 69 Ala. 569; Echols v. State ex rel. Dunbar, 56 Ala. 131.

■ True, the inquiry of whether or not the organic law has been validly and effectually amended is a judicial question, Collier v. Frierson, 24 Ala. 100, and if it should appear from the record that those matters dictated by the constitution for effecting its amendment were transacted in violation thereof, then the amendment may be collaterally assailed to test its validity. Jones v. McDade, 200 Ala. 230, 75 So. 988. But if there perhaps be irregularities in complying with a constitutional prescription, which matters do not or are not required to appear of record, such as that the bill had three readings or (in the case now considered) that the requisite notice of the election was not carried in each county, in absence of an affirmative showing on the record to the contrary, it will be presumed that the constitutional mandates were followed. Jones v. McDade, supra, (2), (9).

This principle has long been recognized. Sustentive thereof are the early cases of Harrison v. Gordy, 57 Ala. 49; Walker v. Griffith, 60 Ala. 361; Clarke v. Jack, 60 Ala. 271; McKemie v. Gorman, 68 Ala. 442, where it was held that in the absence of an affirmative showing to the contrary (in the legislative journals) it would be presumed that proper notice required by the constitution as a prerequisite to passing a special or local law was duly given. Constitution 1875, § 24, art. 4.

Much the same rationale underlies the decisions establishing the general text in 16 Corpus Juris Secundum, Constitutional Law, § 10, page 46 (though this court does not fully adopt such a theory), that

"the determination of whether or not an amendment has been adopted is a judicial question and, therefore, the decision of the canvassing officers may be inquired into by the courts," but that "in a collateral proceeding, the certificate of the political authorities that an amendment was duly ratified is conclusive." See Kingsbury v. Nye, 9 Cal.App. 574, 99 P. 985; Armstrong v. King, 281 Pa. 207, 126 A. 263; In re McConaughy, 106 Minn. 392, 119 N. W. 408(1). Cf. also Leser v. Garnett, 258 U.S. 130, 42 S.Ct. 217(3), 66 L.Ed. 505; Coleman v. Miller, 307 U.S. 433, 59 S.Ct. 972, 981, 83 L.Ed. 1385, 122 A.L.R. 695; Cartledge v. City Council of Augusta, 189 Ga. 267, 5 S.E.2d 661, 665.

The Armstrong v. King case, supra, is illustrative of the theory, where the Supreme Court of Pennsylvania, speaking through Mr. Justice Simpson, points out the manifest evil in permitting amendments already apparently validly ratified be collaterally assailed where some hidden mistake might be uncovered as regards following a constitutional detail in the progress of its adoption. The following quotation from that opinion is apposite: "A new status has arisen, however, once the people have approved the proposed amendment. Whether or not it has been adopted by the required majority of the electors is, of course, still open to judicial inquiry (McConaughy v. Secretary of State, supra [106 Minn. 392, 119 N.W. 408]; Tecumseh National Bank v. Saunders, 51 Neb. 801, 71 N.W. 779); but the details leading up to the submission should not be subjects of judicial consideration at that time [We interpolate collaterally as to matters dehors the record] —A fair approval of an amendment, twice duly passed by the Legislature, is, in effect, though not technically, a judgment of the electorate, and a collateral attack upon it should not be allowed. 'In a collateral proceeding, the certificate of the political authorities that an amendment was duly ratified is conclusive.' 12 Corpus Juris, 695." 126 A. 266–267.

In sum, the constitutional prescription as regards notice, as maybe some others relative to amending the organic law, is not required to be shown of record to have been observed and will be presumed to have been so where the proceedings have reached the stage now attained by the instant amendment. On collateral attack, therefore, matter dehors the record is not available to challenge its validity. Hence, unless their violation is brought under the judicial eye in a direct proceeding at the proper time, it would be unsound to permit it to be done later. If later, the question would arise, how much later? If one might be permitted at this time to contest in the courts the validity of the school amendment now considered, on that ground, at what later date might not a similar contest be undertaken? The evil of permitting such procedure is apparent.

Our opinion is that the amendment under consideration cannot now be assailed for the defect noticed in Section 1 of your inquiry, of consequence of which it becomes unnecessary to further respond thereto.

## II.

Your second question is directed to a consideration of the effect on the validity of the tax election of a typographical error in the published notice of the election provided by the amendment for the authorization of the issuance of the bonds erroneously carrying the maturity schedule of one series as "1956" instead of "1966."

The pertinent provision of the amendment is: " * * * no such additional indebtedness shall be incurred, no such bonds shall be issued, and no such tax shall be levied, until the estimated cost of constructing and equipping said school building hereby proposed to be built, its time of completion, and the amount of the increased indebtedness, the rate of interest to be paid thereon, and the period over which the bonds to be issued will be refunded, shall have been determined upon and made public by the board of education of said county, and the proposed increase in indebtedness and the issuance of bonds and the increase in the rate of taxation shall have been authorized by a ma-

jority of the qualified electors of said special school district voting upon such proposal at an election to be called by the county governing body for said purposes, said election to be held not less than sixty (60) nor more than (120) one hundred twenty days after the adoption of this Amendment. The election provided for herein shall be called, held, and conducted as three-mill school tax elections are held pursuant to Article 7, Chapter 10, Title 52 of the Code of Alabama (1940)."

It is noted from your letter and in the publisher's affidavits appended that the matters required to be determined upon and made public by the publication of the amendment were determined in a resolution adopted by the board of education February 24, 1950, and that said resolution was published at the same time as the notice of the election and in the same county newspaper for the prescribed number of weeks during the month of March, 1950. The maturity schedules were carried correctly in the resolution of the board and were so published and the ballots at the election likewise carried the correct schedules for the maturity dates of the bonds. Our view is that the irregularity in the election notice could not infect the election with invalidity, since the voters were fully informed on the question.

Moreover, it would seem that the requirement of the amendment respecting determination and publication of notice of the "period over which the bonds to be issued will be refunded" was amply complied with by the published resolution of the board carrying the correct schedules.

The answer to your second inquiry is, therefore, in the negative.

Respectfully submitted,

JOEL B. BROWN
Associate Justice

ARTHUR B. FOSTER
Associate Justice

J. ED LIVINGSTON
Associate Justice

ROBERT T. SIMPSON
Associate Justice

DAVIS F. STAKELY
Associate Justice

LAWSON, Justice.

I cannot agree with the position taken by my brothers that we cannot answer your inquiry as to whether or not the proposed constitutional amendment here under consideration was adopted in accordance with the requirements of § 284 of the Constitution of 1901, as amended, for the reason "that no judicial inquiry can now be undertaken to test the validity of the amendment on the ground that the terms of § 284 as regards the giving of notice of the election were not complied with."

The majority seem to base their holding that judicial inquiry on his question is precluded on the ground that the votes have been canvassed, tabulated and returned to the Secretary of State, and it has been found that a majority of the qualified voters who voted at such election upon the proposed amendment voted in favor thereof, and that the result of the election has been made known by the Governor.

It seems to me that such a holding is tantamount to saying that a favorable vote by the electorate on a proposal to amend the constitution precludes judicial inquiry as to whether or not the notice of the election on the proposed amendment was given as required by § 284 of the Constitution of 1901, as amended.

Such is not my understanding of the rule which has long prevailed in this state. In the early case of Collier, Governor, etc., v. Frierson et al., 24 Ala. 100, it was said:

"The constitution can be amended in but two ways: either by the people, who originally framed it, or in the mode prescribed by the instrument itself. If the last mode is pursued, the amendments must be proposed by two thirds of each House of the General Assembly; they must be published in print, at least three months before the next general election for representatives; it must appear, from the returns made to the Secretary of State, that a majority of

those voting for representatives have voted in favor of the proposed amendments; and they must be ratified by two thirds of each House of the next General Assembly after such election, voting by yeas and nays, the proposed amendments having been read, at each session, three times on three several days, in each House. Con.Ala., Clay's Dig. XL.

"We entertain no doubt, that, to change the constitution in any other mode than by a convention, every requisition which is demanded by the instrument itself, must be observed, and the omission of any one is fatal to the amendment. We scarcely deem any argument necessary to enforce this proposition. The constitution is the supreme and paramount law. The mode by which amendments are to be made under it is clearly defined. It has been said, that certain acts are to be done—certain requisitions are to be observed, before a change can be effected. But to what purpose are these acts required, or these requisitions enjoined, if the Legislature or any other department of the government, can dispense with them. *To do so, would be to violate the instrument which they are sworn to support; and every principle of public law and sound constitutional policy requires the courts to pronounce against every amendment, which is shown not to have been made in accordance with the rules prescribed by the fundamental law."* 24 Ala. at pages 108-109. (Emphasis supplied.)

In so far as my research discloses, we have consistently followed the rule announced in Collier, Governor, etc. v. Frierson et al., supra. I will not undertake to cite all the pronouncements of this court wherein the rule of the Collier case, supra, is recognized. However, I do feel it proper to quote from a few of those cases.

In Jones v. McDade, 200 Ala. 230, 233, 75 So. 988, 991, it was said: "It is not debatable in this jurisdiction that the inquiry whether the organic law has been validly, effectually amended is, under the Constitution, a judicial question. The suggestion to the contrary was finally concluded by this court in Collier, Governor,

v. Frierson, 24 Ala. 100, 109, decided in 1854, * * *."

In Johnson v. Craft et al., 205 Ala. 386, 87 So. 375, it was said on original submission as follows:

"Upwards of 60 years ago this court had occasion to consider and to pronounce constitutional principles referable to the change by amendment of the organic law. The opinion then delivered by Justice Goldthwaite established Collier v. Frierson, 24 Ala. 100, as a leading authority in our country on the subject under consideration. Many courts of the highest repute, as well as text-writers, have accorded the doctrine there announced the unreserved acceptance its obvious soundness deserves, and have given that pronouncement its own great place in the constitutional jurisprudence of the republic. With a brevity, and also a comprehension, that is notable and gratifying, it was there said:

" 'We entertain no doubt, that, to change the Constitution in any other mode than by a convention, every requisition which is demanded by the instrument itself must be observed, and the omission of any one is fatal to the amendment. We scarcely deem any argument necessary to enforce this proposition. The Constitution is the supreme and paramount law. The mode by which amendments are to be made under it is clearly defined. It has been said that certain acts are to be done, certain requisitions are to be observed, before a change can be effected. But to what purpose are these acts required, or these requisitions enjoined, if the Legislature, or any other department of the government, can dispense with them. To do so would be to violate the instrument which they are sworn to support, and every principle of public law and sound constitutional policy requires the courts to pronounce against every amendment, which is shown not to have been made in accordance with the rules prescribed by the fundamental law.'

"But recently this court approvingly reproduced the quoted pronouncement, and declared, in orderly sequence and in expression of unquestioned judicial power, that it was the function of the judiciary

to determine whether the prescriptions of the organic law itself have been observed in the effort to amend the Constitution. Jones v. McDade, 200 Ala. 230, 233, 75 So. 988. * * *" 205 Ala. 393, 87 So. 380.

On rehearing in that case, it was contended that judicial consideration of the validity of the constitutional amendment there under consideration was precluded In that connection it was said on rehearing as follows:

"It is now insisted in support of the application for rehearing that the 'road bond amendment' has acquired a status—by lapse of time (not a year since its proclamation, we may note), by favorable vote of the electorate participating in the election, and by some action (not stated in the record before this court) under the theory that the amendment had been constitutionally adopted—that now precludes judicial consideration; this manifestly from motives attributable to expediency only. It is expressly admitted in brief that the question of the validity of the 'road bond amendment' is a judicial question, as was held in the original opinion. The stated contention is rather surprising, in view of the history of this cause, the nature and object of the 'road bond amendment,' and the thoroughly justified public purpose which prompted the presentation of this cause to this court—'to test' the validity of the 'road bond amendment.' The vote on the 'road bond amendment' was taken on February 16, 1920. The proclamation of the Governor, declaring the 'road bond amendment' adopted, was issued on March 1, 1920. This bill to test every suggested objection to the validity of the amendment was filed December 22, 1920, practically 10 months after the executive proclamation was issued. On the argument of the cause in the Supreme Court it was stated that this was a 'friendly suit' to test the validity of the 'road bond amendment' as upon the several grounds of objection set forth in the pleading, and the court was advised of the hope of all persons interested that prompt decision would be given this very important cause.

"If the contention now made is sound, it is manifest that practically all the labor and care bestowed by the court and by counsel upon the distinctly averred objections we were at pains to recite in the 'Statement of the Case,' ante, were almost utterly vain; that the court, in response to a 'test case' made by friendly accord and consent, has engaged its attention and high function in an immaterial, unimportant, chiefly idle performance, not necessary to the determination of the validity of the 'road bond amendment,' for that the facts making up the above-described status acquired by the 'road bond amendment' have never been a matter or subject of doubt or debate; and hence, if the contention now under consideration was well founded and sound, this court could have discharged its whole duty by simply responding to the appeal that 'it is too late, under those uncontested circumstances, to invoke the judicial function of deciding whether the "road bond amendment" was submitted to the electorate in conformity to the Constitution,' the electorate having voted thereon and favorably thereto on February 16, 1920. This court is not responsible in the slightest degree for the delay, if such there has been, in submitting the matter to its determination nor is it accountable at all for any consequences or action that intervened or have interposed since the adjournment of the Legislature of 1919. That this cause was brought 'to test out' the validity of the 'road bond amendment' was both desirable and necessary in view of the object proposed. As its name shows, the 'road bond amendment' was designed to authorize the issuance of bonds and their sale to investors in such securities. To induce investors to buy bonds, it is, of course, essential that their validity shall be beyond question, or that doubts affecting their validity should be removed or composed, since no investor will buy clouded securities; and we apprehend no investor in bonds issued by a state would be favorably inclined to purchase if the highest court of the state offering its bonds on the market was found to be hesitant, for whatever supposed reason or inducement, in maintaining and vindicating the mandates of the Constitution of that state.

"Now, as to the merits of the contention last stated: There are decisions declaring that time and action, under Constitutions asserted to have been irregularly or illegally promulgated, preclude such belated judicial inquiry into their validity. The cases of Taylor v. Virginia, 101 Va. 829, 44 S.E. 754, Brittle v. People, 2 Neb. 198, Miller v. Johnson, 92 Ky. 589, 18 S.W. 522, 15 L.R.A. 524, State ex rel. Torreyson v. Grey, 21 Nev. 378, 32 P. 190, 19 L.R.A. 134, and Secombe v. Kittelson, 29 Minn. [555], 560, 12 N.W. 519, are cited to support this contention. The cases from Virginia and Kentucky, ante, concerned attacks upon the Constitutions as a whole; but, as if to guard its effect from misleading precedent in that state, the Kentucky court declared in Miller v. Johnson, supra, with respect to the amendment of the Constitution, that if the Constitution 'provided how its' amendment was to be effected, 'unless the [that] manner be followed, the judiciary, as the interpreter of that Constitution, will declare the amendment invalid. Koehler v. Hill, 60 Iowa 543 [14 N.W. 738, 15 N.W. 609]; State v. Tufly, 19 Nev. 391 [12 P. 835, 3 Am.St. Rep. 895]'—both of which decisions quoted and applied the doctrine of Collier v. Frierson, 24 Ala. 100, which is reproduced in our original opinion. The Brittle and Secombe Cases involved considerations in which the admission into the Union of the states of Nebraska and Minnesota and acts of Congress relating thereto and subsequent approval were important factors in the conclusions there prevailing. None of these four decisions are relevant in fact, or through constitutional principle to the question presented and decided on this appeal. The Torreyson Case, supra, invoked the court's interpretation of the requirement for the undefined 'publication' of proposed amendments, and, being open to construction, not plain and unambiguous, the court gave effect to contemporaneous construction. It sheds no light here.

"The theory that a favorable vote by the electorate, however unanimous, on a proposal to amend a Constitution, may cure, render innocuous, all or any antecedent failures to observe commands of that Constitution in respect of the formulation or submission of proposed amendments thereto, does not prevail in Alabama, where the doctrine of the stated theory was denied, in obvious effect, by the pronouncement 60 years ago of broad, wholesome constitutional principles in Collier v. Frierson, supra, as quoted in the original opinion, ante. The people themselves are bound by the Constitution; and, being so bound, are powerless, whatever their numbers, to change or thwart its mandates, except through the peaceful means of a constitutional convention, or of amendment according to the mode therein prescribed, or through the exertion of the original right of revolution. 'The Constitution may be set aside by revolution, but it can only be amended in the way it provides,' said Hobson, C. J., in McCreary v. Speer, 156 Ky. 783, 791, 162 S.W. 99, 103." 205 Ala. 399-400, 87 So. 386. (Emphasis supplied)

The opinion of the majority seems to have recognized the principle enunciated in Collier v. Frierson, supra, but proceeds to hold that that principle has no application to the question of whether or not the notice of the election to be held on proposed constitutional amendments has been published in accordance with the provisions of § 284 of the Constitution of 1901, as amended. This latter holding seems to be predicated on the fact that the rule in Collier v. Frierson, supra, has no application except as to matters which are required to appear of record. There is no authority from this jurisdiction which supports such a holding, in so far as my research discloses.

On the contrary, we considered just such a question in Opinion of the Justices, 251 Ala. 78, 36 So.2d 499.

But we have not only treated the question in advisory opinions, but did so in the case of Doody v. State ex rel. Mobile County, 233 Ala. 287, 171 So. 504. That was a mandamus proceeding wherein it was contended that a proposed constitutional amendment had not become a part of the organic law of the state for the reason, among others, that the notice of the election to be held on the proposed constitutional amendment was not published once

a week for four consecutive weeks in Walker County, Alabama, as required by the provisions of § 284, Constitution of 1901.

This court did not refrain from considering the question raised on the ground that judicial inquiry was precluded, as the majority of the justices now hold. In holding that there had been a substantial compliance with the requirements of § 284 of the Constitution of 1901, it was said:

"The bill then reached the office of secretary of state, and the Governor issued the proclamation of notice of the election as provided by section 284 of the Constitution. This proclamation was duly advertised in every county in the state, save one—Walker county, and this failure of advertisement in the county of Walker is the basis for the remaining attack on the amendment.

"Our cases recognize the mandatory character of constitutional provisions as to amending the fundamental law (Jones v. McDade, supra; Johnson v. Craft, supra), but as to legislative details the rule has been adopted that if the constitutional requirements are met 'in substance and legal effect' it will suffice. 'To hold otherwise,' observed the court in Realty Investment Co. v. City of Mobile, 181 Ala. 184, 61 So. 248, 249, 'would subordinate substance to form, the end to the means, and this, we think, the framers of the Constitution did not intend.' There may be 'a substance in form even' as held in the more recent cases of Tommie v. City of Gadsden, 229 Ala. 521, 158 So. 763, and Salter v. City of Anniston, 220 Ala. 199, 124 So. 663. And if we look to substance in the instant case, no difficulty is encountered, for it appears undisputedly that the proposed amendment was adopted by the voters of the state by a majority considerably in excess of the total vote of Walker county. Thus the purpose of the publication was fully served, and the result could in no manner have been affected by this omission. It may properly be termed 'an unimportant accident,' to use the language of the Nebraska court in State [ex rel. Thompson] v. Winnett, 78 Neb. 379,

110 N.W. 1113, 1116, 10 L.R.A.,N.S., 149, 15 Ann.Cas. 781, a case much in point and fully sustaining this conclusion, which we consider also in harmony with our own authorities last above cited.

"The cases of Manos v. State, 98 Tex. Cr.R. 87, 263 S.W. 310; Fahey v. Hackmann, 291 Mo. 351, 237 S.W. 752; State ex rel. State Building Comm. v. Smith, 335 Mo. 840, 74 S.W.2d 27, and State [ex rel. Hall] v. Cline, 118 Neb. 150, 224 N.W. 6, are to like effect as that of State [ex rel. Thompson] v. Winnett, supra, and fully support the conclusion reached." 233 Ala. 290, 171 So. 506.

In my opinion, the majority of the justices have departed from the rule long settled in this jurisdiction and have based their conclusion on cases from other states. I am also of the opinion that a careful and close study of the cases upon which the majority rely discloses that those cases do not fully support the position of the majority. But in any event, the holdings in those cases are not in accord with the law of this jurisdiction.

That the courts of other jurisdictions are not in accord on this matter is fully shown by the following quotation from the case of Armstrong et al. v. King, Secretary of Commerce, 281 Pa. 207, 126 A. 263, 265, cited in the majority opinion: "Under what circumstances, if any, a direct attack can be made on a constitutional amendment, after adoption by the people, because of a failure to comply strictly with some procedural condition leading up to the submission, has been the subject of many and lengthy opinions, with results impossible of reconciliation. Usually the assaults upon proposed amendments have been made before submission; but the curious will find practically all of the cases decided prior to 1909 cited and reviewed in McConaughy v. Secretary of State, 106 Minn. 392, 119 N.W. 408. * * *"

The opinion in McConaughy v. Secretary of State, 106 Minn. 392, 119 N.W. 408, which is also cited in the opinion of the majority, contains an exhaustive treatment of the cases dealing with the question. I will not undertake to discuss the numerous authorities there dealt with. But it is in-

teresting to note that the author of the opinion in that case takes cognizance of the rule in this state by citing and quoting from the case of Collier v. Frierson, supra. The following quotation from the McConaughy case, supra, clearly demonstrates that the conclusion reached by the majority is not in accord with the weight of authority in this country: "An examination of the decisions shows that the courts have almost uniformly exercised the authority to determine the validity of the proposal, submission, or ratification of constitutional amendments. It has been judicially determined whether a proposed amendment received the constitutional majority of votes (Dayton v. City of St. Paul [supra], 22 Minn. 400, Rice v. Palmer, 78 Ark. 432, 96 S.W. 396; Bott v. Wurts, 63 N.J.L. 289, 43 A. 744, 881, 45 L.R.A. 251; State v. Foraker, 46 Ohio St. 677, 23 N.E. 491, 6 L.R.A. 422; Tecumseh National Bank v. Saunders, 51 Neb. 801, 71 N.W. 779; Green v. State, 5 Idaho 130, 47 P. 259, 95 Am. St.Rep. 169; In re Denny, 156 Ind. 104, 59 N.E. 359, 51 L.R.A. 722; Knight v. Shelton, C.C., 134 F. 423); whether a proposed amendment is a single amendment, within the constitutional requirement that every amendment must be separately submitted (State [ex rel. McClurg] v. Powell, 77 Miss. 543, 27 So. 927 [48 L.R.A. 652]; Gabbert v. Chicago, R. I. & P. R. Co., 171 Mo. 84, 70 S.W. 891; State [ex rel. Hudd] v. Timme, 54 Wis. 318, 11 N.W. 785; In re Denny [supra]; Lobaugh v. Cook, 127 Iowa 181, 102 N.W. 1121; People [ex rel. Elder] v. Sours, 31 Colo. 369, 74 P. 167, 102 Am.St. Rep. 34; State [ex rel. Teague] v. Board [of Com'rs] 34 Mont. 426, 87 P. 450; State [ex rel. Thompson] v. Winnett, [78] Neb. [379], 110 N.W. 1113, 10 L.R.A.,N.S., 149 [15 Ann.Cas. 781]); whether the failure to enter the resolution of submission upon the legislative journals invalidates the amendment (Koehler v. Hill, 60 Iowa 543, 14 N.W. 738, 15 N.W. 609; Oakland Paving Co. v. Hilton, 69 Cal. 479, 11 P. 3; West v. State, 50 Fla. 154, 39 So. 412; Durfee v. Harper, 22 Mont. 354, 56 P. 582; State v. Tufly, 19 Nev. 391, 12 P. 835, 3 Am.St. Rep. 895); whether the description of the amendment and the form of the ballot are sufficient (Russell v. Croy, 164 Mo. 69, 63 S.W. 849; State [ex rel. Thompson] v. Winnett, [supra]; Murphy Chair Co. v. Attorney General, [148] Mich. [563], 112 N.W. 127); whether the method of submission is sufficient (Lovett v. Ferguson, 10 S.D. 44, 71 N.W. 765; Russell v. Croy, 164 Mo. 69, 63 S.W. 849); *whether the publication of the amendment or of a notice relative to it is sufficient* (Commonwealth ex rel. Attorney General v. Griest, 196 Pa. 396, 46 A. 505, 50 L.R.A. 568; Russell v. Croy, 164 Mo. 69, 63 S.W. 849); whether the submission may be as well by resolution as by a legislative act approved by the executive (Commonwealth [ex rel. Attorney General] v. Griest [supra]; Warfield v. Vandiver, 101 Md. 78, 60 A. 538, [4 Ann.Cas. 692]; Edwards v. LeSueur, 132 Mo. 410, 33 S.W. 1130, 31 L.R.A. 815; Hays v. Hays, 5 Idaho, 154, 47 P. 732; State v. Dahl, 6 N.D. 81, 68 N.W. 418, 34 L.R.A. 97); at what election the amendment must be submitted (People v. Curry, 130 Cal. 82, 62 P. 516)." 106 Minn. 401-402, 119 N.W. 411. (Emphasis supplied)

A close reading of the case of Cartledge v. City Council of Augusta, 189 Ga. 267, 5 S.E.2d 661, upon which the majority rely, shows that as to the question here treated it is no authority for the position for which it is cited in the majority opinion. In fact, as to questions such as the one here under consideration, the opinion in that case cites and relies upon the case of Hammond v. Clark, 136 Ga. 313, 71 S.E. 479, 38 L.R.A.,N.S., 77, for the proposition that in the absence of some other exclusive method of determination provided by the constitution, whether an amendment has been properly proposed and adopted according to the requirements of the existing constitution, and has become a part of the fundamental law of the state, is generally a judicial question. The Cartledge case, supra, does hold, in effect, that the courts may not go into the question of whether or not fraud prevailed in the election.

In my opinion the cases of Harrison v. Gordy, 57 Ala. 49; Walker v. Griffith, 60 Ala. 361; Clarke v. Jack, 60 Ala. 271; and

McKcmie v. Gorman, 68 Ala. 442, have no bearing on the question here considered.

I proceed, therefore, to answer your questions in the order presented.

## I.

The election on the proposed amendment was held on Tuesday, December 13, 1949. The notices of such election were published in a Baldwin County weekly newspaper on Thursday, November 10, 1949; Thursday, November 17, 1949; Thursday, November 24, 1949; and Thursday, December 1, 1949.

In Opinion of the Justices, 251 Ala. 78, 87, 36 So.2d 499, 509, it was said: "We think that § 284, as amended, in so far as it provides for publication of the notice of the election, is substantially complied with if the publication of notice is made in either of the following ways: (a) Once in each of the four calendar weeks next preceding the calendar week in which the election is to be held; (b) once in each of the four seven-day periods immediately preceding the date of the election."

It appears, therefore, that (a) the notice published on November 17, 1949, was published in the fourth calendar week next preceding the calendar week in which the election was held; (b) the notice published on Thursday, November 24, 1949, was published in the third calendar week next preceding the calendar week in which the election was held; (c) the notice published on Thursday, December 1, 1949, was published in the second calendar week next preceding the calendar week in which the election was held.

But there was no notice published during the first calendar week next preceding the calendar week in which the election was held. This for the reason that although there were four publications made, the first publication, that made on Thursday, November 10, 1949, was inserted one week too early.

So then, the question is, should an election on a proposed constitutional amendment be said to be invalid because in one of the sixty-seven counties of the state there was no publication of the notice of the election made during the calendar week next preceding the calendar week in which the election was held, although the notice of such an election was published during the second, third, fourth, and fifth calendar weeks next preceding the date of the election?

It is well established that the provisions of the constitution providing for its amendment are mandatory, not directory. Johnson v. Craft, supra; Doody v. State ex rel. Mobile County, supra. But in the case last cited, although the mandatory character of the constitutional provisions as to amending the fundamental law was recognized, yet we held that an election on a proposed constitutional amendment was not invalid although there was a complete failure to publish the notice of the election in one county in the state, namely, Walker County.

True, in the Doody case, supra, it appeared that the proposed amendment there under consideration was adopted by the voters of the state by a majority considerably in excess of the total vote of Walker County. That situation does not appear in the matter presently under consideration.

However, I do not think this factor controlling as to whether or not there has been a substantial compliance with the requirements of § 284 of the Constitution of 1901, as amended. I do not think that the proposed amendment here under consideration should be held to be invalid merely because there was no publication of the notice of the election on the proposed amendment made during the calendar week immediately preceding the calendar week in which the election was held, in one of the sixty-seven counties of the state. As was said in Realty Investment Co. v. City of Mobile, 181 Ala. 184, 188, 61 So. 248, 249, "To hold otherwise would subordinate substance to form, the end to the means, and this, we think, the framers of the Constitution did not intend."

In Doody v. State ex rel. Mobile County, supra, reliance was had upon the case of State ex rel. Thompson v. Winnett, 78

Neb. 379, 110 N.W. 1113, 10 L.R.A.,N.S., 149, 15 Ann.Cas. 781, which was said to be a case much in point. A careful reading of that case will show that it fully supports the conclusion which I have reached. The second headnote in that case is as follows: "The Constitution requires that, when proposed amendments thereto are submitted to a vote of the people, said proposed amendment shall be 'published at least once each week in at least one newspaper in each county where a newspaper is published for three months immediately preceding the next election of senators and representatives, at which election the same shall be submitted to the electors for approval or rejection.' Where there is a substantial compliance with this requirement, the fact that the publication was made for one week less then the required time in one county of the state will not invalidate the amendment." 110 N.W. 1113.

It does not appear that the Nebraska court based its conclusion on the fact that the result of the election in the state could not have been affected by the total vote of the county in which the publication of the notice of the election was not had in strict compliance with the constitutional provision.

## II.

As to your second inquiry, I am in accord with the conclusion reached by the majority of the justices.